## MINNEAPOLIS NAT. BANK OF MINNE-APOLIS, KAN., et al. v. LIBERTY NAT. BANK OF KANSAS CITY.

### No. 1028.

Circuit Court of Appeals, Tenth Circuit.

Aug. 7, 1934.

La Rue Royce, of Salina, Kan. (C. W. Burch and B. I. Litowich, both of Salina, Kan., on the brief), for appellants.

Wallace Sutherland, of Kansas City, Mo. (A. L. Cooper, E. A. Neel, and William E. Kemp, all of Kansas City, Mo., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This is a suit instituted by Liberty National Bank, of Kansas City, Mo., against Minneapolis National Bank, of Minneapolis, Ottawa County, Kan., a failed national bank in process of liquidation, and J. G. Hammond, its receiver to establish a trust against the assets of the bank and to compel its payment as a preferred claim, or in the alternative as a common claim.

Goldie C. Morton was engaged in the business of raising, buying, feeding, and fattening cattle in Ottawa county for sale on the market. For many years prior to the events giving rise to this litigation, he had been a customer of Minneapolis Bank of which Roy C. Gafford was president and directing offi-

cer. Morton and Gafford were intimate personal friends, and for about fifteen years Gafford had arranged credit for Morton with which to conduct his business. Gafford frequently charged Morton's notes to his account in the bank as they matured, paying them in that manner. The financial needs of cattle growers in that part of the state were beyond the ability of the local banks to serve. As a result, the officers of the banks located in Ottawa county organized the Central Kansas Cattle Loan Company which made loans to stockmen and rediscounted the notes with outside banks. The Guaranteed Finance Investment Company was organized later for a similar purpose. Gafford was elected president of both companies. Morton secured loans through one and perhaps both of those sources, and plaintiff rediscounted notes and mortgages executed by other stockmen in that manner. But in October, 1928, plaintiff discontinued that practice and determined to take future notes and mortgages direct from the stockgrower to itself, using its own forms for that purpose. It made Morton a loan of $17,000 in December, 1928, taking therefor a note due ninety-one days thereafter secured by a chattel mortgage on two hundred and sixty head of cattle then being fed for the market, one hundred and fifty hogs, and five thousand bushels of corn. Gafford arranged with plaintiff to make the loan. The proceeds, less a discount charge thereon, were credited to the Minneapolis bank on the books of plaintiff. The Minneapolis bank then credited Morton's account with a corresponding sum. The mortgage was filed for record in Ottawa county four days after its execution and it forbade the sale or removal of the chattels from their then location without the written consent of the mortgagee.

In January, 1929, less than a month after the note and mortgage were executed and without plaintiff's knowledge or consent, Morton shipped one hundred and forty head of the cattle to Kansas City and sold them on the market, the sales being made by commission companies. The commission companies, proceeding through regular clearing house channels and in compliance with general directions theretofore received from the Minneapolis bank, deposited the proceeds, aggregating $13,806.32, in Fidelity National Bank and that bank placed them to the credit of the Minneapolis bank. The credit slips relating thereto merely stated that such deposits had been made by direction of Morton. The Minneapolis bank thereupon credited Morton's checking account with that sum. It was subsequently checked out, the account being overdrawn on January 22d, 23d, and 26th. The Minneapolis bank closed February 9th. At that time the balance in Morton's account was $6,963.25, but he owed the bank about $21,000, and the receiver thereafter credited the note with the balance on deposit. Plaintiff was a depositary of the Minneapolis bank, and at the time the latter closed its balance on deposit with the former was $2,267.17.

After learning all the facts, plaintiff instituted suits in Missouri to recover from the commission companies and certain packing companies the value of the cattle sold by the former and purchased by the latter. A settlement was effected through which the commission companies paid plaintiff $3,600, of which $600 was applied to attorneys' fees and expenses and $3,000 to the Morton note. Plaintiff also applied the balance on its books to the credit of the Minneapolis bank on the note in the nature of a set-off. These credits, together with others not involved here, reduced the note to $5,686.03. Plaintiff sought recovery in that amount and its establishment as a preferred claim, contending that at the time the Minneapolis bank received the deposits made to its credit in the Fidelity National Bank, at the time it placed the sum to Morton's credit, and at the time it was subsequently withdrawn and expended, it knew that the money represented proceeds of sales of cattle covered by plaintiff's mortgage and that its acts constituted a wrongful misappropriation, misapplication, and retention of such money.

Defendants denied knowledge of the source of the money in question and specifically contended, among other things, that by the institution of the suits against the commission companies and the packing companies, with knowledge of all the facts, plaintiff barred and estopped itself to maintain this action. A cross-petition was interposed, in which it was alleged that plaintiff wrongfully applied the $2,267.17 on the Morton note as a set-off, and recovery for that sum was prayed.

The court rendered judgment for plaintiff for the full amount sought, established and allowed it as a preferred claim, directed the receiver to pay it as such, and denied recovery on the cross-petition. The case is here on appeal.

■ It is urged at the outset that plaintiff erroneously instituted this action at law. The relief sought is equitable in nature, that is to impress a trust upon the assets of the bank now in the custody of the receiver, but the parties treated the suit as one at law. No re-

quest was made that it be transferred to the equity side of the docket and the question now raised was not otherwise presented to the trial court. Trial by jury was waived in writing. All issues were tried fully and defendants were not prejudiced by the procedure followed. Arkansas Anthracite Coal & Land Co. v. Stokes (C. C. A.) 277 F. 625. In these circumstances, we treat the case as one in equity and review the record accordingly. Liberty Oil Co. v. Condon Nat. Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232.

The effect of the institution of the suits against the commission companies and the packing companies in Missouri, followed by settlement and payment of a substantial sum, is the next question engaging our attention. The suits were plainly for conversion of mortgaged property with recovery of the price paid or the market value of the chattels as the remedy. The doctrine of election of remedies is a harsh one disfavored in equity, and should not be unduly extended. Friedrichsen v. Renard, 247 U. S. 207, 38 S. Ct. 450, 62 L. Ed. 1075; Metropolitan Life Ins. Co. v. Childs Co., 230 N. Y. 285, 130 N. E. 295, 14 A. L. R. 658. But if two inconsistent remedies are available, the exercise of one by any decisive act such as the institution of a suit with full knowledge of the facts, precludes the subsequent exercise of the other. Upon learning all the facts plaintiff was entitled either to disaffirm the voidable transaction and sue for recovery of the converted chattels and if recovery in specie could not be had, then for their market value, or to affirm the sale and pursue the proceeds thereof into the hands of the Minneapolis bank if it had knowledge of the facts relating to the source of the fund. Both remedies were appropriate, but they were inconsistent because the former rested upon a disaffirmance of the transaction and the latter upon ratification of it. The institution of the suits in Missouri, followed by settlement and acceptance of the money paid in discharge of the claim there asserted, constituted an election to repudiate the transaction in toto and to claim the cattle or their value. After thus exercising its election of remedy, plaintiff cannot now affirm the sale, pursue the proceeds thereof and assert that the Minneapolis bank received them impressed with a trust in its favor. Those positions are inconsistent. Taking one constitutes an estoppel against assuming the other. United States v. Oregon Lumber Co., 260 U. S. 290, 43 S. Ct. 100, 67 L. Ed. 261; Midland Savings & Loan Co. v. Trademen's Nat. Bank (C. C. A.) 57 F.(2d) 686.

In an effort to avoid that barrier, plaintiff relies upon a provision contained in the written stipulation through which the suits in Missouri were settled, in which it was recited that the parties thereto should not be prejudiced in their right to file claims, suits or actions against the Minneapolis bank or its receiver. That does not change the situation. Neither the Minneapolis bank nor its receiver was a party to the agreement and hence they are not foreclosed from effectively urging the institution of the suits and their settlement in the manner indicated as an estoppel against plaintiff now asserting an inconsistent remedy here.

Coming to the cross-petition, the doctrine of set-off or counterclaim usually implies and rests upon the existence of reciprocal demands, mutual and subsisting between the same parties. It cannot be invoked if there is lack of mutuality in obligation. For the reasons previously discussed, the Minneapolis bank was not indebted to plaintiff in any sum. It follows that plaintiff wrongfully applied the deposit because there was no obligation to off-set, nor any debt against which it could be charged as a counterclaim. Libby v. Hopkins, 104 U. S. 303, 26 L. Ed. 769. The receiver, therefore, was entitled to judgment against plaintiff on the cross-petition.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent herewith.

Reversed and remanded.