CLARKE et al. v. HOT SPRINGS ELECTRIC
LIGHT & POWER CO. et al.

CUFF v. SAME.

CLARKE et al. v. WRIGHT et al.
Nos. 1140–1142.

Circuit Court of Appeals, Tenth Circuit.
April 1, 1935.

M. A. Kline, of Cheyenne, Wyo., for appellants.

Hagens & Wehrli and E. E. Enterline, all of Casper, Wyo., and Wilfred O'Leary, of Cheyenne, Wyo., for appellees R. J. Ireland and Thermopolis Northwest Electric Co.

C. J. Heermance, of New York City, for appellee Herman Rehrer.

Fred R. Wright, Gail L. Ireland, Clarence L. Ireland, and Dudley W. Strickland, all of Denver, Colo., and Charles Caldwell, of New York City, pro se.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

These appeals grow out of litigation which was before this court in Clarke v. Hot Springs Electric Light & Power Company, 55 F.(2d) 612. At that time this court affirmed, save in a minor particular, a decree of the district court of Wyoming entered on July 16, 1930. Since the present appeals are, in part, from orders of the trial court refusing to tamper with that decree after its affirmance, its pertinent provisions may be noticed.

That decree was entered in a suit to foreclose a mortgage on the property of the Hot Springs Electric Light & Power Company. There being insuperable objections to foreclosing the specific lien of the mortgage, the decree directed that the defendants pay into court the sum of $72,000, found to be the value of the mortgaged properties at the time they were converted by defendants, with 7 per cent. interest for four years, or a total sum of $92,160; a lien was fastened on the properties of the corporate defendant to secure the payment of said sum; upon the payment of that sum to the clerk of the court, the liens of the decree and the mortgage to be discharged. In paragraph 10, it was decreed that "the attorneys for the said plaintiffs be allowed and paid the sum of $10,000 out of the amount hereinabove decreed to be paid * * * together with their expenses necessarily incurred in the prosecution of this case, which the court finds to be $673.80." The decree provided that the balance of the fund should be distributed to the bondholders.

From this decree the plaintiffs appealed, contending that the court erred in its finding as to the value of the mortgaged properties at the time of their conversion by defendants. No assignment of error was directed to the point that the decree did not provide for interest from the date of the decree until payment, nor was error assigned as to the allowance of attorneys' fees from the fund. Error was assigned because the decree did not provide for reimbursement to plaintiffs for certain expenses incurred in preparing the case for trial.

This court directed the trial court to make allowance, out of the fund, to plaintiffs for reasonable and necessary expenses incurred in the preparation of the case for trial, and "In all other respects," the opinion and mandate recite, "the decree is affirmed."

Still dissatisfied, plaintiffs petitioned for certiorari, which was denied. 287 U. S. 619, 53 S. Ct. 19, 77 L. Ed. 537. In the petition for the writ, the attorneys to whom

allowance had been made for fees were made respondents, and that allowance was for the first time challenged. Upon the denial of this petition, the mandate was filed in the trial court on March 21, 1932.

On July 20, 1932, a hearing was had as to the amount of expenses which plaintiffs had incurred in preparing for trial. Evidence was taken and the matter submitted on briefs. John T. Clarke, a bondholder not a named party, claimed to have expended several thousand dollars on this case and allied matters, and also claimed $4,400 for 110 days' time he testified he had devoted to the case.

On November 4, 1932, the trial court filed an opinion setting forth its views, and on December 12, 1932, entered findings of fact, conclusions of law, and a "Final Decree" allowing $1,293.98 for expenses incurred by plaintiffs and John T. Clarke, and disallowing the other amounts claimed.

This order of December 12, 1932, was final as to all matters which were remanded to the trial court for determination. No appeal was taken within the statutory period. Five months after the final order, but within the term, an elaborate petition for rehearing was filed, seeking a review of all of the court's findings of December 12, and bringing onto the record, for the first time, an entirely new question, to wit, that the decree of July 16, 1930, should be amended to require the defendants to pay interest on the amount decreed to be owing by them, for the time elapsing pending plaintiffs' unsuccessful efforts to increase the award. On May 8, 1933, this phase of the petition was denied, and the petition continued as to other matters. On that day, the defendants paid into court the sum decreed to be due from them.

■ On August 5, 1933, an appeal was taken by plaintiffs below from the order of May 8, 1933 (No. 1140) "and particularly" from that part of the order denying interest pending the appeal. The only other part of the order of May 8 was to continue the hearing on the balance of the petition to a future date, which is not an appealable order. On the same date another appeal (No. 1141) was taken from the same order by the trustee for the depositing bondholders. On August 8, 1933, amended petitions for appeal were filed which were not allowed, and which differed from the petitions of August 5 only in phraseology.

On April 4, 1934, the trial court entered an "Order Overruling Petition for Rehearing and Making Allowance to John T. Clarke for Services." The order allowed John T. Clarke $1,250 for his services, but made no other change in the order of December 12, 1932.

On July 2, 1934, an appeal was taken from the order of December 12, 1932, "as modified by the order of April 4, 1934." This appeal is likewise docketed as No. 1140.

On May 8, 1933, the date on which defendants paid the $92,160 into court, the trial court ordered the clerk to pay Wright and Ireland the $10,673.80, allowed them by the decree of July 16, 1930, for services and expenses as counsel for plaintiffs. This was done. On July 26, 1933, plaintiffs filed a motion to require Wright and Ireland to repay the money into court, claiming that the money belonged to plaintiffs and not their counsel. To which Wright and Ireland filed an answer, offering to pay any other attorneys participating in the litigation such sums as the court decreed, and to account to John T. Clarke for the sums advanced by him for services in this case. Many other counsel filed claims against the fund. Extensive hearings were held, and on April 5, 1934, the trial court entered findings and a decree; allowances were made to all other counsel and the right of John T. Clarke to reimbursement for sums advanced by him was recognized; Wright and Ireland were required to account for the balance shown on a striking of accounts between them and Mr. Clarke. On July 2, 1934, an appeal was taken by plaintiffs and John T. Clarke only, from that order (No. 1142).

■ It is extremely doubtful whether there is anything before us except the amount of the allowance to John T. Clarke for his services. The decree of July 16, 1930, was affirmed by this court except as to the one item of expenses of plaintiffs in preparing for trial. The trial court had no authority to alter or revise the decree in any other particular. Gaines v. Rugg, 148 U. S. 228, 13 S. Ct, 611, 37 L. Ed. 432. The trial court was without authority to modify the decree, after affirmance, by adding to it a provision as to interest or by changing the allowance of counsel fees from "the attorneys for the said plaintiffs" to "the plaintiffs." If the decree of July 16, 1930, was in error in such respects, the points should have been raised on the first appeal. Errors in a decree rendered July 16, 1930, cannot be corrected by appeals

taken in August, 1933. Certainly a trial court should not be reversed for declining to amend a decree which this court has affirmed.

The only power which the trial court had after affirmance was to enforce the decree as affirmed, and to make an allowance for expenses. After a full hearing, it made such allowances on December 12, 1932. That order was appealable, but no appeal was taken within the statutory period. A petition for rehearing seasonably filed within the time for appeal will toll the time for appeal. But the petition was not filed within the time for appeal. A petition for rehearing cannot resurrect a right of appeal which has expired. If filed within the term, even after the time for appeal has expired, the trial court may grant it, thus vacate the decree, and start again. But if the rehearing is denied, the original decree stands, and the right of appeal is not revived. All this has been carefully spelled out by the courts. Larkin Packer Co. v. Hinderliter Tool Co. (C. C. A. 10) 60 F.(2d) 491; Northwestern Public Service Co. v. Pfeifer (C. C. A. 8) 36 F.(2d) 5; Chicago, M. & St. P. Ry. Co. v. Leverentz (C. C. A. 8) 19 F.(2d) 915; Conboy v. First Nat. Bank of Jersey City, 203 U. S. 141, 27 S. Ct. 50, 51 L. Ed. 128. The trial court denied the rehearing as to the expenses, and allowed it only as to the allowance to Mr. Clarke for his services. The only avenue of escape from these settled principles is to treat the allowance made to Mr. Clarke in 1934 as a rehearing on the whole matter of expenses.

No motions to dismiss the appeals have been interposed; the questions have not been briefed; and while we entertain grave doubts about the pendency of the appeals except as to the amount allowed John T. Clarke for his services, we turn briefly to the merits.

### Expenses Allowed to Plaintiffs.

John T. Clarke, a business man, assisted in preparing the case for trial. He testified he spent 110 days in that work; he appraised the value of his services at $40 a day, and testified that his services "were much more expert than many lawyers could have given in this kind of work." The trial court has had extensive opportunity to judge of the character and value of the services Mr. Clarke renders in litigation. It is claimed the trial court is bound by Mr. Clarke's appraisal of his own services. If so, it is fortunate he did not appraise them at $400 a day. But it is well settled that a trial court is not bound to allow fees his own knowledge and experience tell him are exorbitant because an array of friendly experts testify to their reasonableness. Blackhurst v. Johnson (C. C. A. 8) 72 F.(2d) 644; Federal Oil Marketing Corp. v. Cravens (C. C. A. 8) 46 F.(2d) 938; Tracy v. Spitzer-Rorick Trust & Savings Bank (C. C. A. 8) 12 F.(2d) 755; McDougal v. Black Panther Oil & Gas Co. (C. C. A. 8) 277 F. 701. Neither plaintiffs nor Mr. Clarke has any reason to complain of an allowance of $1,250 for the services rendered in connection with the trial of this case; and the bondholders other than plaintiffs and Mr. Clarke have not appealed.

We likewise are of opinion that the trial court was fair, if not generous, in the allowance of other expenses. Patiently he heard the evidence, examined the briefs, prepared findings of fact and conclusions of law. There is no reason to examine the lengthy items claimed, one by one. Before this suit was brought, plaintiffs brought another, but were so neglectful of it that the court dismissed it for want of prosecution. The court properly declined to load this case with the expenses of that one. Part of the items claimed were taxed as costs to the defendants. A claim for estimated stenographic expense was properly disallowed as too uncertain. The trial court noted that during the period in which the time and expenses of many trips to Wyoming were claimed against this fund, Mr. Clarke had much other litigation in Wyoming, and did not satisfactorily segregate the time and expenses properly chargeable to this fund.

There is no suggestion in the record or many briefs filed of any reason why this court should interfere with the facts as found by the chancellor. Time and again, this court has stated the general rule that findings of fact of a chancellor will not be disturbed on appeal unless it appears that a serious mistake has been made. Standard Oil Co. of Colorado v. Standard Oil Co. (C. C. A. 10) 72 F.(2d) 524.

### Interest on the Award.

The decree of July 16, 1930, allowed interest in the amount of $20,160. The plaintiffs appealed, but assigned no error as to the amount of interest allowed. The decree was affirmed. A year and two

months after the mandate went down, plaintiffs asked the trial court to amend the decree by adding interest from July 16, 1930, to the date of payment. The trial court declined to modify or amend the decree except in the one particular directed by this court.

The trial court was right. There is a time for all things, and the time to object to the omission of interest from the decree of July 16, 1930, was on the appeal therefrom; the time to object to any oversight in an order of affirmance is by petition for rehearing or other appropriate proceedings in the appellate court. There must be an end to litigation sometime, and there would be no end if trial courts could modify or amend their decrees after affirmance. Of the multitude of cases on the point, it is only necessary to cite those where the trial court undertook to add interest to a judgment or decree after affirmance, for the time elapsed pending the appeal.

In Boyce v. Grundy, 9 Pet. 275, 289, 290, 9 L. Ed. 127, a decree in equity requiring the payment of money was affirmed. Nothing was said in the decree or order of affirmance concerning interest. Upon the mandate coming down, the trial court added interest pending the appeal. Upon the second appeal, the interest was eliminated. Mr. Justice Story, referring to the Supreme Court rule on interest, held: "It is, therefore, solely for the decision of the supreme court, whether any damages or interest (as a part thereof) are to be allowed, or not, in cases of affirmance. If, upon the affirmance, no allowance of interest or damages is made, it is equivalent to a denial of any interest or damages; and the circuit court, in carrying into effect the decree of affirmance, cannot enlarge the amount thereby decreed; but is limited to the mere execution of the decree, in the terms in which it is expressed. A decree of the circuit court, allowing interest in such a case, is, to all intents and purposes, quoad hoc, a new decree, extending the former decree."

In re Washington & Georgetown R. Co., 140 U. S. 91, 94, 96, 11 S. Ct. 673, 35 L. Ed. 339, was a proceeding in mandamus against a trial judge who added interest to a judgment which did not provide for interest and which had been affirmed without any order as to interest. The writ was issued, the court saying: "The fact that the judgment of this court merely affirmed the judgment of the general term with costs, and said nothing about interest, is to be taken as a declaration of this court that, upon the record as presented to it, no interest was to be allowed. It was thereupon the duty of the general term to enter a judgment strictly in accordance with the judgment of this court, and not to add to it the allowance of interest. * * * Under these circumstances, the general term had no authority to make its order of June 9, 1890, in regard to interest on the judgment. * * * The principle has been well established, in numerous cases, that, on a mandate from this court, containing a specific direction to the inferior court to enter a specific judgment, the latter court has no authority to do anything but to execute the mandate."

The statute relied upon, 28 USCA § 811, was originally enacted in 1842. Rule 26 of our court, and Rule 30 of the Supreme Court, here relied upon (28 USCA following section 354), are the same as Rule 62, adopted in December, 1852, save that the present Rule 30 is qualified by the expression "and interest is properly allowable." These cases are therefore binding authorities. They have been uniformly followed by the lower courts. In United States v. United States Dist. Court (C. C. A. 9) 272 F. 611, the rule was followed in a case where, after affirmance, interest was awarded bondholders in an equitable decree. See, also, Hagerman v. Moran (C. C. A. 9) 75 F. 97; Green v. Chicago, S. & C. R. Co. (C. C. A. 6) 49 F. 907.[1]

The trial court being without power in the premises, there is no need to inquire whether this court should have modified the decree, on the first appeal, by including interest on the award pending the appeal. It may be said, however, that the delay in payment was caused by plaintiffs and not defendants; the defendants did not appeal from the award, but paid the money into court the day the trial court denied the claim as to interest. The decree pro-

---

[1] To the effect that 28 USCA § 811 does not apply to decrees in equity, nor extend to either judgments or decrees of an appellate court, and that rules of appellate courts do not extend the power of the district courts, see, in addition to cases above cited, Perkins v. Fourniquet, 14 How. 313, 328, 331, 14 L.Ed. 441, and The New York, 108 F. 102 (C. C. A. 6), affirmed, 189 U. S. 363, 23 S. Ct. 504, 47 L. Ed. 854.

vided that upon the payment of $92,160 the lien on the properties of defendants should be discharged. As long as plaintiffs kept the case in the courts, defendants could not clear their properties of the lien; and until such clearance could be had, they were not bound to pay. No equitable reason is suggested why defendants, ready, able, and willing to comply with the decree, should be required to pay interest to plaintiffs for the period of a delay brought about by plaintiffs' unsuccessful effort to increase the award. The Scotland, 118 U. S. 507, 6 S. Ct. 1174, 30 L. Ed. 153; Bates v. Dresser, 251 U. S. 524, 40 S. Ct. 247, 64 L. Ed. 388; Zurich General Accident & Liability Co. v. Mid-Continent Petroleum Corp. (C. C. A. 10) 43 F.(2d) 355, 358.

The decrees appealed from in Nos. 1140 and 1141 are affirmed.

### The Attorneys' Fees (No. 1142).

In the decree of July 16, 1930, the court made the following order: "That the attorneys for the said plaintiffs be allowed and paid the sum of ten thousand dollars ($10,000.00) out of the amount hereinabove decreed to be paid by the said defendants, R. J. Ireland and the Thermopolis Northwest Electric Company, to the clerk of this court, together with their expenses necessarily incurred in the prosecution of this case, which the court finds to be six hundred seventy-three and 80/100ths Dollars ($673.80)."

Upon appeal from that decree, no error was assigned to this allowance. The decree in this respect was affirmed by this court and certiorari denied. When appellees paid the award into court on May 8, 1933, the court directed the clerk to pay this allowance to Wright and Ireland, the only attorneys of record for the appellants. This was done. Appellants then petitioned the court to require the attorneys to repay the money to the clerk. Wright and Ireland, in their answer, offered to pay any amounts fixed by the court for services of other attorneys who assisted in the litigation. The trial court fixed such sums, and no one objects thereto. Wright and Ireland, in their answer, stated that "it is the sole purpose and wish of these respondents to dispose of said allowance in conformity with the intent of this court and such directions as this court may give." They set up a statutory lien for other services performed and asked that it be satisfied out of any part of such allowance found to be due appellants. The trial court, after a trial, found that John T. Clarke was entitled to $6,436.90 on account of advancements to Wright and Ireland and other counsel for their services and expenses; but that the said attorneys had a lien thereon for $6,596.91, which was established and foreclosed; that because of this offset, appellants were entitled only to a credit against their indebtedness to Wright and Ireland; their petition to require it to be repaid to the clerk was therefore denied.

If we understand the attack made on the trial court's order in this regard, it is twofold: (1) That the allowance should have been made to appellants or to John T. Clarke, and not to their attorneys; (2) that Wright and Ireland should repay appellants the moneys advanced by them while they are indebted to Wright and Ireland on other accounts for more than the advancements; that is, that Wright and Ireland should be denied the ordinary right of set-off.

1. The contention that the allowance in the original decree was not intended to be made to Wright and Ireland cannot be sustained. Judge Kennedy has twice held that the allowance was made to Wright and Ireland, although their names did not appear in the order; once when he ordered the clerk to pay the sum "to Wright and Ireland," and again in his present findings. And, as was tersely said by the late and revered Mr. Justice Holmes in construing an order made by Judge Pollock, "The Judge knows at least what he intended and supposed himself to do." There is internal proof of the correctness of this interpretation: Wright and Ireland were the only attorneys of record for appellants; the allowance for expenses is specific to a penny, and such expense allowance tallies exactly with the expenses of Wright and Ireland and of no one else.

There being no reasonable doubt as to the construction of the decree, the relief now sought can only be had by altering the decree so as to make the allowance to appellants instead of Wright and Ireland. The authorities heretofore cited in connection with amending the decree after affirmance to include interest is a complete bar to altering the decree now with reference to counsel fees. We do not intimate that, under any circumstances, either Judge Kennedy or this court would countenance an arrangement by which an attorney, to whom an allowance has been

made for legal services, should divide that rendered to bondholders other than appellants; and their holdings were such that they paid on about the same basis as provided by the contract between Wright and Ireland and appellants. No complaint is made that the allowance is excessive, and very apparently it is not. The allowance was properly made to the attorneys. Central Railroad v. Pettus, supra; Colley v. Wolcott, supra; Nolte v. Hudson Nav. Co., supra. The bondholders have recovered $92,160 through a long and complicated litigation, for a total charge of approximately eleven per cent. of the recovery. Appellants have been reimbursed for all sums advanced by them; all bills have been paid; the disposition of the case, on the face of the record, seems to be entirely just and fair to all concerned. No complaint was made below or here because appellants' share of the $10,000 allowance exceeds the contract rate for the services; and, as we understand the bond holdings, there could be no complaint on that score.

What is the objection? It comes down to this: Wright and Ireland owe appellants $6,436.90 on account of their advancements. Appellants owe Wright and Ireland $6,596.-91 on other accounts. Appellants asked Judge Kennedy, and now ask this court, to require Wright and Ireland to pay one side of the account while the other side remains unsatisfied.

 We cannot accede to any such request. Independent of the right of set-off provided by statute, courts of equity have long recognized the right to set off mutual liquidated accounts. Mr. Justice McKenna years ago defined set-off as "the discharge or reduction of one demand by an opposite one." Auten v. United States National Bank, 174 U. S. 125, 19 S. Ct. 628, 637, 43 L. Ed. 920.

"Cross demands and counterclaims, whether arising out of the same or wholly disconnected transactions, and whether liquidated or unliquidated, may be enforced, by way of set-off, whenever the circumstances are such as to warrant the interference of equity to prevent wrong and injustice. * * * The adjustment of demands by counterclaim or set-off, rather than by independent suit, is favored and encouraged by the law, to avoid circuity of action and injustice." North Chicago

fee in direct defiance of the established canons of professional ethics, nor skirt so close to champerty and maintenance as to allow an attorney's fee to those who are not officers of the court. Such a course would permit speculators, not subject to the discipline of the court, to stir up litigation. The claim that this attorney's fee should be paid to appellants directly, and let them retain whatever sum they can after negotiations with counsel, cannot be sustained.

2. Where there was conflict in the testimony at the trial, the court below and this court find that Mr. Wright's testimony is correct. From that testimony it appears that John T. Clarke, for himself and his brothers, employed Wright and Ireland to represent them in the foreclosure suit for a fee which was not contingent and which was based upon the amount of work done. Charges for services and expenses were to be paid monthly, an agreement not kept by the clients. Nothing was then said as to allowance for services which might be made in the decree, or charges against the fund recovered for other bondholders, if the case was won. Months later John T. Clarke intimated that the fees "will be paid out of the decree," to which Wright and Ireland replied that if that were to be done, a settlement for fees must be made "on an entirely different basis." The matter dropped there. Wright and Ireland were paid $5,196.41 under this agreement; Clarke paid other counsel $1,240.49, making a total paid by Clarke to all attorneys of $6,-436.90.[2]

 The services rendered by Wright and Ireland resulted in a substantial recovery for bondholders other than appellants. Such bondholders so benefited should pay for the services. It would be inequitable to permit them to share in the proceeds without contributing to the expense. Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157; Central Railroad v. Pettus, 113 U. S. 116, 5 S. Ct. 387, 28 L. Ed. 915; Colley v. Wolcott (C. C. A. 8) 187 F. 595; Nolte v. Hudson Nav. Co. (C. C. A. 2) 47 F.(2d) 166; Clarke v. Hot Springs Electric Light & Power Co. (C. C. A. 10) 55 F.(2d) 612. The allowance of the $10,000 fee to Wright and Ireland compensated them to the extent of approximately $5,000 for services

---

[2] These disbursements to other counsel were part of the expenses claimed by appellants in the proceedings appealed from in Numbers 1140 and 1141. They were reimbursed therefor by the order appealed from in Number 1142.

Rolling-Mill Co. v. Ore & Steel Co., 152 U. S. 596, 615, 14 S. Ct. 710, 715, 38 L. Ed. 565.

"But, broadly speaking, it represents the right which one party has against another to use his claim in full or partial satisfaction of what he owes to the other. That right is constantly exercised by business men in making book entries whereby one mutual debt is applied against another. If the parties have not voluntarily made the entries, and suit is brought by one against the other, the defendant, to avoid a circuity of action, may interpose his mutual claim by way of defense, and if it exceeds that of the plaintiff, may recover for the difference." Studley v. Boylston Bank, 229 U. S. 523, 528, 33 S. Ct. 806, 808, 57 L. Ed. 1313.

Mr. Justice Butler, speaking for a unanimous court, recently said: "The adjustment of defendant's demand by counterclaim in plaintiff's action rather than by independent suit is favored and encouraged by the law. That practice serves to avoid circuity of action, inconvenience, expense, consumption of the courts' time, and injustice. Rolling Mill Co. v. Ore & Steel Co., 152 U. S. 596, 615, 616, 14 S. Ct. 710, 38 L. Ed. 565; Railroad Company v. Smith, 21 Wall. 255, 261, 22 L. Ed. 513; Partridge v. Insurance Company, 15 Wall. 573, 579, 21 L. Ed. 229. In the case last mentioned the court, speaking through Mr. Justice Miller, said (page 580 of 15 Wall., 21 L. Ed. 229): 'It would be a most pernicious doctrine to allow a citizen of a distant State to institute in these courts a suit against a citizen of the State where the court is held and escape the liability which the laws of the State have attached to all plaintiffs of allowing just and legal set-offs and counterclaims to be interposed and tried in the same suit and in the same form.'" Chicago & N. W. Ry. v. Lindell, 281 U. S. 14, 17, 50 S. Ct. 200, 201, 74 L. Ed. 670.

Our own court, speaking through Judge BRATTON, has said that "the doctrine of set-off or counterclaim usually implies and rests upon the existence of reciprocal demands, mutual and subsisting between the same parties." Minneapolis Nat. Bank v. Liberty Nat. Bank (C. C. A. 10) 72 F.(2d) 434, 436. We have also held that "the doctrine of set-off is more flexible in equity than in law," and quoted with approval from Blount v. Windley, 95 U. S. 173, 177, 24 L. Ed. 424, the following excerpt: "This remedy [of set-off] has been very much extended in equity where the insolvency of the judgment plaintiff, his non-residence within the jurisdiction of the court, the fact that the mutual obligations have grown out of the same transaction, and many other purely equitable considerations, have been held to authorize the setting off of many classes of obligations held by the defendant, against a judgment duly recovered against him in a court of law." Bromfield v. Trinidad Nat. Inv. Co. (C. C. A. 10) 36 F.(2d) 646, 649, 71 A. L. R. 542.

See, also, discussion of the subject by Judge Woolley, in Gray v. School Dist. of Brownsville (C. C. A. 3) 67 F.(2d) 141, certiorari denied, Hustead v. School Dist., 291 U. S. 660, 54 S. Ct. 377, 78 L. Ed. 1052.

Distinct equitable grounds as a condition to the right of set-off have been relaxed during the years, until it may be doubted whether any equitable ground is necessary other than the familiar one of avoidance of a multiplicity of suits and circuity of action. The point need not be ruled, for the nonresidence of appellants affords a recognized equitable basis for the right to set off these mutual accounts. North Chicago Rolling-Mill Co. v. Ore & Steel Co., 152 U. S. 596, 615, 617, 14 S. Ct. 710, 38 L. Ed. 565.

To require Wright and Ireland to pay appellants while the matured, liquidated, and mutual offsetting account is unsatisfied, would be grossly inequitable, result in additional litigation, unnecessarily burden other courts, and result in nothing but delay and expense.

The order of the trial court is fortified by the fact that both the Colorado and Wyoming statutes provide for an attorney's lien. The Colorado statute is chapter 71, Laws of 1903; the Wyoming statute is section 66-201, Wyo. Rev. Stat. 1931. Both read: "An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession, in the course of his professional employment, upon money in his hands belonging to his client, and upon money due to his client, and in the hands of the adverse party, in an action or proceeding in which the attorney was employed, from the time of giving notice of the lien to that party."

This language is too clear for construction. Even if an attorney may not sell papers of his client to liquidate the lien, the statute would be meaningless if a·client

could compel the delivery over of papers or money while indebted to the attorney for services rendered. In re Paschal, 10 Wall. 483, 19 L. Ed. 992.

The order of the trial court in No. 1142, being in full accord with equity and good conscience, is affirmed.