**Ford B. FORD, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee/Cross-Appellant,**

v.

**Hilario ALFARO, Individually and doing business as Fence Masters Contractors, Defendant-Appellant/Cross-Appellee.**

Nos. 85–1615, 85–1825.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 1986.

Decided March 27, 1986.

Edward D. Sieger, U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellee/cross-appellant.

Oscar Luna, Fresno, Cal., for defendant-appellant/cross-appellee.

Before GOODWIN, HUG, and REINHARDT, Circuit Judges.

HUG, Circuit Judge:

This is an appeal and cross-appeal from the district court's bench trial. On the substantive claims, the district court held that two employees were unlawfully discharged in violation of 29 U.S.C. § 215(a)(3) (1982), and that two other employees were not discharged unlawfully. The district court awarded back wages and post-judgment interest, but not at the rate of interest established by 28 U.S.C. § 1961(a) (1982). No pre-judgment interest was awarded. On the procedural claims, the district court sanctioned appellant and his counsel for failing to file timely a pretrial statement and missing a scheduled pretrial conference.

On appeal, defendant-appellant Hilario Alfaro ("Alfaro") contends that the district court abused its discretion in imposing a

sanction against him for failing to file a pretrial statement and to appear at a scheduled pretrial conference. As a sanction, the district court adopted the Secretary of Labor's pretrial statement as the court's pretrial order. Alfaro argues that the district court's order was issued without affording Alfaro proper notice or opportunity to be heard and that, because of the sanction, he was unable to present a defense due to the preclusive nature of the order.

On cross-appeal, the Secretary of Labor ("Secretary") contends that (1) the district court's finding that two employees were not discharged unlawfully was clearly erroneous; (2) the district court abused its discretion by not increasing the award of back wages to include pre-judgment interest; and (3) the district court abused its discretion by not utilizing the interest rate established by 29 U.S.C. § 215(a)(3) in calculating post-judgment and pre-judgment interest.

For reasons that will be explained in full, we find that Alfaro was not prejudiced by the district court's sanction, and that the Secretary's contentions raised on his cross-appeal have merit. Accordingly, we affirm in part, reverse in part, and remand to the district court for proceedings not inconsistent with this opinion.

## I.

### FACTS

#### A. The Sanction

At one time or another during the course of litigation, three attorneys have represented Alfaro. The original attorney of record was Gilbert Lopez, who was succeeded by Joel Murillo. Mr. Murillo first appeared on behalf of Alfaro at the November 8, 1983 status conference. Oscar Luna became involved in the case at the February 9, 1984 depositions of Hilario Alfaro, Romona Alfaro, and Erlinda Martinez.

The district court's sanction stems from counsels' failure to file a pretrial statement before May 10, 1984 and their nonappearance at the May 17, 1984 pretrial conference. The pretrial conference was scheduled by the district court on November 10, 1983. Former E.D.Cal.R. 104(b) required Alfaro to file his pretrial statement at least seven days before the pretrial conference. On May 7, 1984, Lopez and Murillo petitioned the court for a substitution of attorneys. On May 9, 1984, the day before the pretrial statement was due, the court granted the request and substituted Luna for Lopez and Murillo.

All three attorneys failed to request an extension of time to file the pretrial statement or notify opposing counsel and the district court that no one would appear at the May 17 pretrial conference. On May 18, 1984, at the request of the district court, the magistrate, before whom the pretrial conference was scheduled, withdrew approval of the substitution of attorney form as defective because Luna had not signed it, and ordered Lopez and Murillo to file a pretrial statement by May 23, 1984 and to appear at the rescheduled pretrial conference on May 24, 1984. Notice of the magistrate's order was sent, together with notice that the substitution of attorneys had been disapproved, to Lopez on May 18, 1984. Once again, Lopez and Murillo attempted a change in counsel on May 21, 1984, but this request also was defective. On May 22, 1984, the Secretary served by mail a notice of motion for sanctions.

On June 5, 1984, without a hearing, the magistrate concluded that Alfaro's attorneys had been "dilatory" and, accordingly, adopted the Secretary's pretrial statement as the court's pretrial order, and ordered Lopez and Murillo to reimburse $313.83 to the Labor Department to cover its costs for appearance at the scheduled May 17, 1984 pretrial conference. This order was upheld by the district court on July 24, 1984. Alfaro's trial brief eventually was filed four days before the August 28, 1984 bench trial. The monetary sanction award has not been appealed; however, Alfaro contends that the district court's order unduly restricted the scope of his case, and that he was prejudiced by his inability to present

evidence beyond that which was relied on in the Secretary's pretrial statement.

## B. The Unlawful Discharge

Alfaro operates Fence Masters Contractors ("Fence Masters"), a company that installs chain and wood fences. As a construction business engaged in commerce within the definition of 29 U.S.C. §§ 203(r) and (s)(4) (1982), Fence Masters is covered by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (1982).

On March 24, 1981, a Department of Labor ("Department") compliance officer investigated Fence Masters and noted certain recordkeeping deficiencies. The officer explained to Alfaro that the FLSA required him to maintain detailed records of each employee's address and work schedule. The officer also discussed with Alfaro the FLSA requirements regarding overtime pay when an employee works in excess of 40 hours per week.

In September 1982, Fence Masters was again investigated by the Department. In order to gather additional information pertaining to company compliance with FLSA laws, the Department distributed to company employees questionnaires that requested information about employee work hours and pay rates. In December of that year, four questionnaires were received by the Department, each indicating that the employee worked overtime without being paid at 1½ times the employee's regular hourly wage. On the basis of these questionnaires and follow-up interviews, the Department initiated a full investigation. It was after the investigation commenced that certain employees alleged that they were discharged, or constructively discharged, unlawfully.

As to each allegation of unlawful discharge, the district court made the following findings of fact:

(1) Atanacio Zuniga was employed at Fence Masters for approximately seven years as a fencer. On January 14, 1983, shortly after the Department reopened its investigation of Fence Masters, Alfaro discharged Zuniga. At the time of the discharge, Alfaro accused Zuniga of instituting a complaint with the Department and of causing the investigation to be reopened.

(2) Raul Espino was employed at Fence Masters for approximately five years as a fencer, until his discharge on January 6, 1983. At the time of discharge, Alfaro accused Espino of cooperating with the Department's investigation and of instituting a complaint against Alfaro.

(3) Graciela Zuniga was employed at Fence Masters for one year until April of 1982, and again from mid-December of 1982 to January 14, 1983, as bookkeeper and secretary. Mrs. Zuniga is married to Atanacio Zuniga, who, as indicated above, was discharged on January 14, 1983. On that same day, Alfaro accused Mrs. Zuniga of taking Fence Masters's payroll records to the Department and of conspiring with her husband to file a complaint with the Department against Alfaro. Alfaro stated that the two of them had caused the investigation to be reopened, and that he would get even with them for this act. During this exchange, Alfaro stated that he did not want Mrs. Zuniga to work for him any more. Thereafter, on this same day, Mrs. Zuniga quit her job.

(4) Augustin Guzman worked at Fence Masters as a fencer for approximately eight years. On June 23, 1984, Guzman and Alfaro had a heated exchange: Alfaro threatened Guzman with serious bodily harm after Guzman told Alfaro that he intended to testify in the Government's case against Alfaro. During this incident, Alfaro's son also threatened Guzman and pushed him several times. For the next two weeks, Alfaro's son continued to make threatening remarks and gestures toward Guzman. In addition, Guzman's supervisor and some of the other employees failed to give Guzman sufficient work instructions, which impeded his ability to perform his job. Thereafter, the district court found, Guzman quit his employment on July 7, 1984.

The Secretary brought this action in August 1983, under sections 16(c) and 17 of

the FLSA, 29 U.S.C. §§ 216(c) and 217, to enjoin Alfaro, individually and doing business as Fence Masters Contractors, from violating the overtime and recordkeeping provisions of the FLSA and to recover back wages and statutory liquidated damages due affected employees. In his amended complaint, the Secretary added allegations of continuing unlawful discrimination by Alfaro against those employees who Alfaro believed were assisting the Department in its action against him.

The district court held a bench trial on August 28–30, 1984. During trial, the parties settled their dispute over the overtime and recordkeeping violations. The trial was continued, however, on the issue of retaliatory discharge of employees Espino and the Zuniga couple. On October 11, 1984, the district court entered a partial judgment on the settlement issues of overtime and recordkeeping violations, but reserved judgment on the discharge claims of Espino and the Zuniga couple. On October 15–16, 1984, the trial resumed on the issue of the constructive discharge of employee Guzman. On January 23, 1985, the district court concluded that Alfaro had discriminatorily discharged Espino and Atanacio Zuniga in violation of section 15(a)(3). As for Grace Zuniga and Augustin Guzman, the district court concluded, without further elaboration, that "Ms. Zuniga and Mr. Guzman were not discharged in violation of Section 15(a)(3)." On January 31, 1985, Alfaro appealed to this court and the Secretary thereafter cross-appealed.

## II.

## DISCUSSION

Alfaro argues on appeal that it was an abuse of discretion for the district court to impose a preclusive sanction for the pretrial misfeasance of his counsel without the benefit of proper notice and a hearing. In his cross-appeal, the Secretary raises three arguments: (1) the district court erred in finding that employees Grace Zuniga and Augustin Guzman were not discharged in violation of 29 U.S.C. § 215(a)(3); (2) the district court abused its discretion in not awarding post-judgment interest at the rate established by 28 U.S.C. § 1961; and (3) the district court's failure to award prejudgment interest was an abuse of discretion.

### A. Standards of Review

We review the imposition of sanctions and the award of interest under an abuse of discretion standard. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). We review the facts-related issues involved in the unlawful discharge claims under a clearly erroneous standard. Fed.R.Civ.P. 52(a) establishes the rule that findings of fact will not be set aside unless they are clearly erroneous. *Taylor v. Moram Agencies,* 739 F.2d 1384, 1385–86 (9th Cir.1984). A finding of fact is clearly erroneous within the meaning of Rule 52(a) when " 'the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *United States of America v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). To the extent that the findings of the trial court represent an application of the law to the facts found, this court is not restricted by Rule 52(a) and may make its own application of the law as it understands it. *Id.* at 1386.

### B. Sanction

The district court imposed the sanction against Alfaro and his counsel pursuant to Fed.R.Civ.P. 16(f), which provides:

If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference ..., or if a party or party's attorney fails to participate in good faith, the judge, upon motion or his own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of *or in addition to* any other sanction, the judge shall require the party or the attorney representing

him or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

(Emphasis added.) For twice failing to file a pretrial statement and attend a pretrial hearing, the district court imposed a sanction that precluded Alfaro from presenting evidence outside the Secretary's pretrial statement, which was adopted as the district court's pretrial order. Alfaro contends on appeal that the district court imposed the sanction without affording Alfaro proper notice to show cause why the sanction should not be imposed. The Secretary interprets that portion of Rule 16(f) that says the court may act upon its "own initiative" to mean that no notice is required since the district court can impose sanctions *sua sponte.*

■ We agree with Alfaro. The expression "own initiative" does not allow the district court to impose sanctions without notice and an opportunity to be heard. *See Miranda v. Southern Pacific Transportation Co.,* 710 F.2d 516, 523 (9th Cir.1983). Therefore, Alfaro is correct in asserting that the district court abused its discretion in imposing sanctions without first giving notice of its intent to do so and without affording an opportunity for a hearing.

■ The lack of notice may not be fatal, however, since Alfaro must show that the district court's sanction precluded Alfaro from presenting some material portion of his case in order to prevail on this appeal. Alfaro did not indicate to the district court,

nor on appeal, what, if any, material evidence, either in the form of documentation or testimony, he was precluded from presenting or cross-examining. Thus, Alfaro has not made any showing of any possible prejudice. Accordingly, the district court's failure to afford Alfaro the notice and hearing before imposition of the sanction was harmless error.

## C. Unlawful Discharge Claim

Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), makes it unlawful for any person:

> to discharge or in *any other manner discriminate* against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding....

(Emphasis added.)

There are no reported decisions discussing the application of section 15(a)(3) to circumstances similar to those present here. However, section 15(a)(3) is similar to other analogous statutory protective provisions; the case authority interpreting these analogous provisions is instructive in the context of the FLSA.[1]

The district court concluded as a matter of law that Augustin Guzman and Grace Zuniga were not discriminated against in violation of section 15(a)(3). The district court did not articulate a basis for its conclusion. The Secretary delineates three possible bases for the district court's ruling, and then argues that each is insufficient to sustain the decision of the district court: (1) the district court may have be-

---

**1.** Section 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158 (1982), provides in relevant part:

Sec. 8. (a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

....

(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter....

Section 704(a) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–3(a) (1982) provides, in relevant part, as follows: (a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

lieved that section 15(a)(3) does not protect employees against physical threats and interference with their work performance done in retaliation for asserting their rights under the FLSA; (2) the district court may have believed that Alfaro's actions did not create sufficiently unpleasant working conditions that a reasonable person would feel compelled to resign; and (3) the district court may have concluded that section 15(a)(3) does not protect employees who are forced to "quit" their employment, as opposed to those who are actually discharged.

■ As to the first contention, section 15(a)(3), on its face, protects employees from retaliatory conduct by the employer. Retaliatory disruption in the workplace has been found actionable under the FLSA and analogous provisions. *See Dual v. Griffin,* 446 F.Supp. 791, 799–800 (D.D.C.1977); *Mitchell v. Robert DeMario Jewelry, Inc.,* 180 F.Supp. 800, 801–02 (M.D.Ga.1957), *aff'd,* 260 F.2d 929 (5th Cir.1958), *rev'd on other grounds,* 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); *Mullins Broadcasting Co.,* 200 N.L.R.B. 119, 126–27 (1972). Although no FLSA cases involving threats or acts of physical violence have been reported, courts have held that analogous sections of the NLRA are violated by this type of conduct. *See McLane/Western, Inc. v. NLRB,* 723 F.2d 1454, 1456–57 (10th Cir. 1983); *NLRB v. Gibbs Corp.,* 297 F.2d 649, 651 (5th Cir.1962).

■ As for the second contention, no FLSA cases discuss particular working conditions with a view to assessing whether an ordinary employee would feel compelled to resign if confronted with a difficult work environment. In a different context, however, (a discharge on account of race), this circuit set forth a rule of "constructive discharge." A claim of constructive discharge will be sustained if the district court finds that a reasonable person in a similar situation would have felt that he was forced to quit because of intolerable and discriminatory working conditions. *See Satterwhite v. Smith,* 744 F.2d 1380, 1381 (9th Cir.1984).

The concept of constructive discharge is pertinent as well to the last basis on which the court could have concluded that section 15(a)(3) is inapplicable when an employee quits, as opposed to being discharged. As this court has said, in the context of the analogous NLRA provision, 29 U.S.C. § 158(a)(3), "[a]n employer cannot do constructively what the act prohibits his doing directly." *NLRB v. Holly Bra of California, Inc.,* 405 F.2d 870, 872 (9th Cir.1969). Similarly, this court has interpreted the anti-retaliation and other non-discrimination provisions of Title VII, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (1982), and the non-interference provision of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140 (1982), to prohibit a constructive discharge. *See Nolan v. Cleland,* 686 F.2d 806, 812–13 (9th Cir.1982) (Title VII); *Sutton v. Atlantic Richfield Co.,* 646 F.2d 407, 411 n. 5 (9th Cir.1981) (ADEA); *Lojek v. Thomas,* 716 F.2d 675, 680–82 (9th Cir.1983) (ERISA).

### 1. *Grace Zuniga's Case*

■ In its findings of fact and conclusions of law, the district court found that on January 14, 1983, Alfaro accused Mrs. Zuniga of conspiring with Mr. Zuniga to institute a complaint against Alfaro with the Department of Labor. At that time, Alfaro stated that she and her husband had caused the investigation to be reopened, and that Alfaro would get even with them. The district court made a finding that, during this argument, Alfaro told Mrs. Zuniga that he did not want her to work for him any more. Later that day, Mrs. Zuniga quit her job.

The above facts not only support a finding of constructive discharge, but also a finding of actual discharge. Alfaro's conduct violated section 15(a)(3) as a matter of law.

### 2. *Augustin Guzman's Case*

■ The district court found that Alfaro had threatened Guzman with serious bodily harm after Guzman told Alfaro that he

intended to testify at the trial. The district court found that Alfaro's son, at the time of this incident, threatened and pushed Guzman several times. The district court found that the son's harassment continued for the next two weeks, after which Guzman quit his job. Finally, the district court found that Guzman's supervisor and other employees failed to give Guzman sufficient work instructions, which impeded Guzman's ability to perform his job.

As a matter of law, this conduct amounted to a constructive discharge. Alfaro, himself, and certain key employees, created such intolerable working conditions that a reasonable person would have found it necessary to resign. This type of behavior is a clear violation of section 15(a)(3).

### D. Post-judgment Interest

■ The district court awarded post-judgment interest at 8% per year on the back wages due Atanacio Zuniga and Espino. Pursuant to 28 U.S.C. § 1961(a), the Secretary argues that the rate should have been 9.09%, which was the Treasury bill rate in effect when judgment was entered.

Section 1961(a) provides in pertinent part:

Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

The parties agree that the district court is not required to award post-judgment interest in equity cases such as this one, but may do so within its discretion. *Clarke v. Hot Springs Electric Light & Power Co.,* 76 F.2d 918, 922 n. 1 (10th Cir.1935). The Second Circuit questioned whether the legal/equitable dichotomy still has vitality, but avoided the issue by upholding an award based upon the court's equitable powers to grant interest by analogy to section 1961. *See Donovan v. Sovereign Sec., Ltd.,* 726 F.2d 55, 58 (2d Cir.1984). With the modern merger of law and equity, the distinction established in *Clarke* seems inappropriate today. Therefore, we construe the language of section 1961 to be mandatory in cases awarding post-judgment interest. The district court abused its discretion in failing to award the discharged employees the statutory interest rate on their back wages.

### E. Pre-judgment Interest

It is well established in other circuits that, in the absence of a liquidated damage award, pre-judgment interest is necessary to fully compensate employees for the losses they have suffered. *See Donovan,* 726 F.2d at 57–58; *Usery v. Associated Drugs,* 538 F.2d 1191, 1194 (5th Cir.1976); *Hodgson v. Wheaton Glass Co.,* 446 F.2d 527, 534–35 (3rd Cir.1971); *Hodgson v. American Can Co.,* 440 F.2d 916, 922 (8th Cir. 1971); *McClanahan v. Mathews,* 440 F.2d 320, 324–26 (6th Cir.1971). "[I]t is ordinarily an abuse of discretion not to include pre-judgment interest in a back-pay award under the FLSA." *Donovan,* 726 F.2d at 58.

■ The reason for awarding pre-judgment interest is to make whole those employees who have been deprived of wages unlawfully. An award of pre-judgment interest also serves to discourage unlawful employment practices by denying to employers the interest-free use of money that is being delayed by administrative and judicial process. For these reasons, we conclude that it is ordinarily an abuse of discretion not to include pre-judgment interest in back-pay awards under the FLSA. Affected employees, therefore, are entitled to pre-judgment interest.

■ Although section 1961 does not speak to pre-judgment interest, this court held in *Western Pacific Fisheries, Inc. v. SS President Grant,* 730 F.2d 1280 (9th Cir.1984) that the same rate should be applied to pre-judgment interest "unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate." 730 F.2d at 1289. Therefore, this issue is remanded to the

district court so that the court can consider the respective equities.

## III.

### CONCLUSION

We agree with Alfaro that due process was lacking when the district court imposed a preclusive sanction. Alfaro is not entitled to relief, however, since the record is silent as to any material evidence he would have presented had he not been so precluded. The district court's holding that Grace Zuniga and Augustin Guzman were not discharged unlawfully is reversed as clearly erroneous. Moreover, we reverse as an abuse of discretion the district court's failure to award pre-judgment interest and to award post-judgment interest at the statutory rate.

AFFIRMED in part, REVERSED in part, and REMANDED.