METROPOLITAN LIFE INSURANCE COMPANY, Appellant, *v.* CHILDS COMPANY, Respondent.

Foreclosure — lease — landlord and tenant — liability for rent — neither commencement of action to foreclose mortgage nor entry of judgment of foreclosure and sale constitute eviction — commencement of foreclosure action and making lessee party thereto not an election of remedies — mortgagee not estopped from seeking to collect rent.

1. As a general rule a tenant is liable under his contract of lease until he is evicted. Neither the beginning of an action to foreclose a mortgage superior to his lease in which he is made a defendant, nor the entry of a judgment of foreclosure and sale constitute such an eviction. Until the sale actually takes place he remains liable to his landlord on his contract. If, on the contrary, he is not a party to the action his rights are not affected. There is never an eviction. Until the sale he must pay his landlord. Afterwards, the purchaser,

2. Plaintiff, the holder of a mortgage on real property, commenced an action to foreclose and made the subsequent lessee thereof a party defendant, the complaint demanding that its rights under the lease be ended. To avoid the expense of a receivership the owners of the property assigned to the mortgagee the rents to accrue with full power to enforce their payment. Notice of an assignment was given to the lessee and it paid its rents to the mortgagee until there was served upon it a judgment of foreclosure and sale providing that the premises be sold and the lessee " be forever barred and foreclosed of all right, title, interest and equity of redemption in the said premises so sold," whereupon, acting in good faith, it sold its fixtures and quit and vacated the premises. A few days later the plaintiff in the foreclosure sale made a motion to discontinue the action against the lessee and to cancel the *lis pendens* and vacate the judgment against it, which motion, though opposed by the lessee, was subsequently granted. On the sale, about ten months later, the property was bid in by the mortgagee and it received a referee's deed subject to defendant's lease. Thereafter it conveyed the premises also subject to the lease, and now seeks in this action to recover rent from the time defendant vacated the premises to the time of said transfer. *Held,* that the mortgagors or their assignee were entitled to recover rent from the lessee from the date it ceased to pay rent to the date of the sale, and that thereafter the purchaser might recover.

3. A contention that plaintiff in the foreclosure action had an election of remedies in that by making the tenant a party it might assert its superior rights in the property and by omitting it, it might sell with the tenancy outstanding, and that having made its election it was bound, cannot be sustained.

4. Nor may the principle of estoppel be applied on the ground that defendant as mortgagee and as assignee of the rents notified the tenant that it intended to enforce its superior rights and formally asserted its intention by entering judgment. By that judgment the plaintiff announced that when the sale occurred the tenant would be evicted. Until such a sale there was no eviction.

5. Nor can it be successfully contended that plaintiff having represented that when the sale occurred, if ever, the defendant would be evicted and the defendant in reliance on this statement having vacated the premises before it was notified of the plaintiff's change of heart, and a sale in fact having taken place, the defendant should be relieved of the obligation to pay rent from the date of sale onwards. The intention was subject to change and was changed.

*Metropolitan Life Ins. Co. v. Childs Co.,* 183 App. Div. 230, reversed.

(Argued November 30, 1920; decided March 1, 1921.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 15, 1918, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frederick C. Tanner* and *Frederick C. Lawyer* for appellant. The defendant Childs Company had no right as against its landlord Robinson or said Robinson's assignee to abandon the premises on May 5, 1914, and claim an eviction. (*Peck* v. *Knickerbocker Ice Co.*, 18 Hun, 183; *Home Life Ins. Co.* v. *Sherman*, 46 N. Y. 370; *Mason* v. *Lenderoth*, 88 App. Div. 38; *Mitchell* v. *Bartlett*, 51 N. Y. 447; *Whalin* v. *White*, 25 N. Y. 462; *Rider* v. *Bagley*, 84 N. Y. 465.) The action of the plaintiff in the foreclosure suit, in originally making the defendant Childs Company a party to that action, could not and did not constitute an election to such an extent as to authorize the defendant to vacate the premises, nor did any estoppel arise from such act. (*Henry* v. *Herrington*, 193 N. Y. 218; *54th St. Realty Co.* v. *Goodman*, 80 Misc. Rep. 639; *Hollins* v. *Hubbard*, 165 N. Y. 534.)

*William A. Barber* and *Joseph Diehl Fackenthal* for respondent. The doctrines of election and estoppel bar plaintiff from collecting rents for periods before the sale in foreclosure as well as for periods after that sale. (*Mason* v. *Lenderoth*, 88 App. Div. 38; *Cornwell* v. *Sanford*, 222 N. Y. 248.) Plaintiff is not now entitled to collect rents by virtue of the assignment introduced in evidence — its right to do so has lapsed. (*Rutherford Realty Co.* v. *Cook*, 130 App. Div. 76; *Maurer* v. *Grimm*, 84 App. Div. 575.)

ANDREWS, J. The Beard Building on Liberty street, New York, was conveyed to Mr. and Miss Robinson subject to a mortgage, duly recorded, held by the Metro-

politan Life Insurance Company. On May 1, 1902, they leased a portion of these premises to the Childs Unique Dairy Company which later became the defendant. This lease was to run for twenty-one years at an annual rental of $8,000. Under it the defendant went into possession. On December 8, 1913, the Metropolitan Life Insurance Company began an action to foreclose its mortgage. The Childs Company was made a defendant and the complaint demanded that its rights under the lease be ended. Evidently the plaintiff in this action was about to apply for the appointment of a receiver. To avoid the trouble and expense of this proceeding the owners agreed to adopt " another method " to secure to it the same result. They, therefore, on December seventeenth assigned to it all rents accruing after January, 1914, with full power to enforce their payment by summary proceedings or otherwise, and to pay from the rents so collected the expenses necessary for running the building. Should the foreclosure action be discontinued the agreement ended. What was practically accomplished was to make the plaintiff receiver of the rents, with much of the same powers as would have been possessed by a receiver appointed by the court. As we construe the instrument in question, it did not obtain an absolute title to such rents as it might collect. It held them in trust to satisfy any deficiency that might arise on the foreclosure sale. Any surplus necessarily would be returned to the Robinsons. The latter were still owners of the property. The Childs Company was still their tenant.

Notice of the agreement was given to the Childs Company and it paid the rent to the insurance company for January, February, March and April. On April 24, 1914, a judgment of foreclosure and sale in the usual form was obtained and on May first was served on the Childs Company. It provided that the premises be sold and that the latter company " be forever barred and

foreclosed of all right, title, interest and equity of redemption in the said premises so sold." On May fifth, acting " in good faith and reasonable reliance upon said judgment," the Childs Company sold its fixtures, quit and vacated the premises and moved elsewhere. On May sixteenth the plaintiff in the foreclosure action made a motion to discontinue the action against the Childs Company, and to cancel the *lis pendens* and vacate the judgment as against it. This motion was opposed and was denied at Special Term, but it was granted by the Appellate Division in October, 1914. It is not claimed that this order was made without jurisdiction. On March 19, 1915, the sale occurred. The property was bought by the Metropolitan Life Insurance Company and a referee's deed was given to it, subject, however, to the defendant's lease. On December thirty-first the purchaser conveyed the premises to 406 West Thirty-first Street Corporation again subject to the same lease and on the same day assigned this lease itself to the same corporation. Under these circumstances the insurance company seeks to recover rent from May 1, 1914, to December 31, 1915.

As a general rule a tenant is liable under his contract of lease until he is evicted. Neither the beginning of an action to foreclose a mortgage superior to his lease in which he is made a defendant, nor the entry of a judgment of foreclosure and sale constitute such an eviction. The sale may never occur. The amount due may be paid by the obligors. The plaintiff may repent. Until the sale actually takes place the tenant remains liable to his landlord on his contract. (*Whalin* v. *White*, 25 N. Y. 462; *Mitchell* v. *Bartlett*, 51 N. Y. 447; *Mason* v. *Lenderoth*, 88 App. Div. 38.) If, on the contrary, he is not a party to the action his rights are not affected. There is never an eviction. Until the sale he must pay his landlord. Afterwards, the purchaser. As to the

19

latter there is no necessity of attornment. It may well be that some remnants of that doctrine, having its origin in the incidents of the feudal law, still persist. Indeed that they do is recognized in section 224 of the Real Property Law. (Cons. Laws, ch. 50.) But section 223, following early English statutes, sweeps away all learning on the subject where the reversion of leased real property is granted. It is entirely clear that if a lease is prior to a mortgage a sale under the latter is but a sale of the reversion. Yet it has been said that where a sale under a mortgage foreclosure has taken place, then a tenant under a subordinate lease, although not made a party to the action, does not remain liable under his lease unless he attorns. (*Wacht* v. *Erskine*, 61 Misc. Rep. 96.) The cases cited in support of this proposition are not cases where the lessee was unaffected by the judgment. Concededly if his rights were ended by the sale, he no longer remains liable for rent. But where he is not a party his interests are not touched. (*Davidson* v. *Weed*, 21 App. Div. 579.) It may well be that no privity of contract or estate exists between him and the purchaser (*Sprague Nat. Bank* v. *Erie R. R. Co.*, 22 App. Div. 526), and that such a relationship is ordinarily essential to the accrual of rent. Yet we think that such a sale as was here made was a grant of the reversion within the meaning of section 223. It was a grant of what interest the mortgagor had in the property at the time the mortgage was given, less the leased estate — the grant of what was left after the leased estate was subtracted. It is precisely the same so far as the estate granted was concerned as if the lease had been prior to the mortgage. It was so held in *Commonwealth Mortgage Co.* v. *De Waltoff* (135 App. Div. 33). With that conclusion we agree.

In view of these rules there can be no question but that the Robinsons or their assignee would have been entitled to recover rent from the defendant from May 1, 1914, to March 19, 1915 (the date of the sale), and that

thereafter the purchaser might recover unless facts exist which require a different result. Here such facts can arise only because of the assignment of rent by the Robinsons to the mortgagee and because, although not a party at the time of the sale, the Childs Company had been a defendant until after the entry of judgment.

It is said that the plaintiff in the foreclosure action had an election of remedies. By making the tenant a party it might assert its superior rights in the property. By omitting it, it might sell with the tenancy outstanding. It elected to take the former course at some time — either when it served the complaint or when it entered judgment. Whether or not such an election would affect the Robinsons were their interests involved (*Bowdish* v. *Page*, 153 N. Y. 104), at least it was bound. It might not later change its decision. Yet it now seeks as assignee to recover rents to the date of the sale, and thereafter as purchaser.

We fail to find any basis for this claim. The doctrine of the election of remedies is a harsh rule which is not to be extended. (*Friederichsen* v. *Renard*, 247 U. S. 207.) It is only applicable " when a choice is exercised between remedies which proceed upon irreconcilable claims of right " (*American Woolen Company* v. *Samuelsohn*, 226 N. Y. 61); " where there is, by law, or by contract, a choice between two remedies " (*Henry* v. *Herrington*, 193 N. Y. 218). One may not both affirm and disaffirm a contract (*Conrow* v. *Little*, 115 N. Y. 387); or take a benefit under an instrument and repudiate it (*Haydock* v. *Coope*, 53 N. Y. 68). One may not treat the possessor of his land both as tenant and as trespasser. (*Stuyvesant* v. *Davis*, 9 Paige, 427.) A plaintiff must choose to regard a defendant either as a corporation or as a partnership. (*Clausen* v. *Head*, 110 Wis. 405.) In short, one may not invoke the aid of the court upon inconsistent theories. (*Crossman* v. *Universal Rubber Co.*, 127 N. Y. 34.) Here no such situation exists. The Metropolitan Life Insurance Company might

or might not make the defendant a party. The option was in its hands. But the power either to sue or not to sue is not the possession of inconsistent remedies. There is but one remedy which may or may not be enforced. The decision to act or not to act is not an election. If it were, serious results would follow. Such an election once made is made forever. And it is made, not merely when the rights of the parties are fixed by judgment, but when the action is begun, based upon one theory inconsistent with and destructive of the other. (*Terry* v. *Munger*, 121 N. Y. 161; *Matter of Garver*, 176 N. Y. 386.) If an election has been made here, therefore, it was by the commencement of the action, not by the entry of judgment. May a foreclosure action not be discontinued as to one defendant? May a defendant omitted not be subsequently made a party? May a purchaser not foreclose against a lien junior to the mortgage? (*Moulton* v. *Cornish*, 138 N. Y. 133.)

If not election, however, it is said the principle of estoppel may be applied. In discussing this question we do not consider the position of the Robinsons — whether interested as they still were in the rents, interested in obtaining a surplus on the sale, any act or representation of the mortgagee would affect them. We will assume that the latter might estop itself from claiming rents either as assignee or as purchaser. The claim is that as assignee of the rents and as mortgagee it tells the tenants that it intends to enforce its superior rights. It formally asserts its intention by entering judgment. The tenant is given notice that if the foreclosure action proceeds to sale he will be evicted. Normally a sale follows judgment. Believing that it will in this case the tenant abandons possession. Can an estoppel be based on this state of facts?

An estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury. When this occurs it

would be inequitable to permit the first to enforce what would have been his rights under other circumstances. Doubtless should a landlord, before the end of his term, request a tenant to vacate his premises and should the tenant comply (*Bedford* v. *Terhune,* 30 N. Y. 453), or should he directly or indirectly command that this be done, and should the tenant obey (*Cornwell* v. *Sanford,* 222 N. Y. 248), the landlord might no longer enforce the lease because he would be estopped if for no other reason. So would be a tenant, if the landlord acted on the faith of appearances. But the action or the judgment is far from equivalent to such a request or command.

It is not argued that the beginning of the action has any bearing on this question, or that the tenant might then have vacated the premises. Certainly the Childs Company did not so construe its rights. For four months it continued to pay rent to the mortgagee. But reliance is placed upon the entry of judgment and its service on the tenant. By that judgment the plaintiff announced, as we have seen, that when the sale occurred the tenant would be evicted. The latter might take the plaintiff at its word and immediately vacate. It is difficult to see any justification for this claim for the months before the sale. If the landlord requests or orders the tenant, rightfully, to leave on the first of October may he leave on the first of July and refuse to pay rent thereafter? But is the doctrine of estoppel applicable to the situation arising after the sale?

Giving the widest meaning to any representation, any request, any order contained in the judgment we find no more than this. " When and if a sale in foreclosure occurs you must vacate the premises." Until such a sale there was no eviction. Whether it would or would not occur, or when, no one knew. That question was open. Probably a sale, yes. That the mortgagee then intended to sell, yes. Yet all knew this intention was subject to be defeated by the action of the mortgagor —

by the action of other tenants — by the action of the defendant itself. The plaintiff might discontinue the action. Could the defendant complain? Could it complain if the sale was postponed from time to time? About the judgment there was no finality. It did not state what would necessarily occur. It was not intended as a representation to the defendant. It could not in fact be so understood. It constituted no irrevocable act upon which the defendant might rely. At most it was a threat that upon certain contingencies the plaintiff would in the future exercise its legal rights and evict the defendant. And long before the time to act arrived this threat was withdrawn by the discontinuance of the action against the Childs Company.

It might be argued, however, that having represented that when the sale occurred, if ever, the defendant would be evicted, the defendant in reliance on this statement having vacated the premises before it was notified of the plaintiff's change of heart, and a sale in fact having taken place, the defendant should be relieved of the obligation to pay rent from the date of sale onwards. In this state the surrender of the lease *in futuro* is possible. (*Allen* v. *Jaquish*, 21 Wend. 628, 635.) Doubtless this may be equally effected by operation of law or by estoppel. (*Vandekar* v. *Reeves*, 40 Hun, 430.) The action of the tenant constituted an acquiescence in the demand to vacate effectual upon the happening of the event.

Again, however, this misrepresents the true effect of the judgment. Not only did it fail to determine that the sale would occur, but at most it announced only the existing intention of the plaintiff that if one was in fact had, then it should be so made as to evict the defendant. This both parties knew. Such a truthful statement as to the present intention of a party with regard to his future acts is not the foundation upon which an estoppel may be built. (*Langdon* v. *Doud*, 10 Allen, 433.) The intention is subject to change. Here it was changed. And the

Appellate Division long before the sale vacated the judgment and permitted a discontinuance as to the Childs Company. True, this latter order is not controlling here. If an estoppel arose because of the entry of judgment, it would not be affected by the subsequent discontinuance. But at least it is an indication that the judgment did not show a final and irrevocable choice on the part of the mortgagee upon which reliance might be placed and upon which action might be based.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

McLAUGHLIN, J. (dissenting). I am of the opinion that the plaintiff in the foreclosure action is equitably estopped from asserting that the defendant be held to its lease. After the foreclosure action had been brought, judgment entered canceling defendant's lease, and copy of the judgment and notice of entry served on its attorney, defendant was justified in assuming its lease was to be cut off and moving out of the premises.

The defendant conducted a business upon the premises. It was necessary to find another place, fit it up and remove to it, which it did at considerable expense. It was not required to remain in the premises, awaiting the sale and writ of assistance, and after it had been put upon the street, attempt to find another place in which to transact its business. It thereby changed its position to its injury, in reliance on the acts of the insurance company in the foreclosure action. The insurance company accomplished its purpose of obtaining possession of the premises, unincumbered with the lease.

The case is quite analogous to the position of a tenant who has been served with a precept in summary proceedings. In such case, as said by Judge COLLIN, in *Cornwell* v. *Sanford* (222 N. Y. 248): "Judicial decisions have uniformly held that the moving by the tenant

from the leased premises, enabling thereby the landlord to take peaceable possession of them, after the issuance and service of the precept in summary proceedings, cancels the lease and annuls the relation of landlord and tenant as of the time of the removal; the service of the precept 'is an election and declaration on the part of the landlord that the tenant should remove from the premises and that the lease should be canceled; it creates to the tenant the right to remove from the premises and effects the cancellation of the lease at any time thereafter; the removal is the precise act and effect the landlord sought through the service of the precept and the proceeding, and it is entirely immaterial, within the law, whether it is produced through the warrant or the conduct of the tenant in .obedience to the precept." (p. 252.)

I, therefore, dissent from the conclusion reached by Judge ANDREWS and vote to affirm the judgment appealed from.

HOGAN, CARDOZO and POUND, JJ., concur with ANDREWS, J.; HISCOCK, Ch. J., and CRANE, J., concur with McLAUGHLIN, J.

Judgment reversed, etc.