Rego Building Corporation, Plaintiff, *v.* Maryland Casualty Company and Another, Defendants.

Municipal Court of New York, Borough of Manhattan, Third District, June 11, 1934.

*Max E. Greenberg*, for the plaintiff.

*Thomas J. Meehan, Jr.*, for the defendant Maryland Casualty Company.

Garside, J. This is an action in which the plaintiff seeks to recover from defendant casualty company the sum of $690.43. There is no dispute as to the amount. The dispute is with respect to liability. It is conceded that Rego Building Corporation, plaintiff, entered into a contract with defendant Zenith Electric Construction Co., Inc., for the performance of certain electrical work on the United States post office building at Glen Cove, N. Y, It is conceded that defendant Maryland Casualty Company issued a bond by which it agreed to indemnify the obligee (plaintiff herein) against any loss or damage directly arising by reason of the failure of the principal (defendant Zenith Electric Construction Co., Inc.)

to faithfully perform said contract. The indemnity bond was signed and sealed November 17, 1932, and contained the following " Express Condition " numbered " Third:" " That no claim, suit, or action by reason of any default shall be brought against the Principal or Surety after the 17th day of November, 1933; and that the Principal shall be made a party to any suit or action if he (*sic*) can, with reasonable diligence be summonsed (*sic*)."

This action was commenced January 12, 1934, by service of a summons and complaint upon defendant casualty company. The sole question before the court is whether or no the casualty company can defeat recovery under the aforesaid indemnity bond by reason of the fact that the action was commenced subsequent to November 17, 1933. Plaintiff contends that the conduct of the defendant casualty company was such that there was either an express or implied waiver of the limitation provision and /or that the defendant casualty company by reason of its conduct should be estopped from pleading the limitation.

Defendant Zenith Electric Construction Co., Inc., appeared in the action and interposed a counterclaim. It defaulted, however, at the trial and, upon motion, its counterclaim was dismissed, and judgment is granted against it by default in the amount sued for.

It is conceded that defendant Zenith Electric Construction Co., Inc. (principal on the bond), defaulted under its contract with plaintiff on or about July 5, 1933. It is conceded that due notice of that default was given to defendant Maryland Casualty Company (surety on the bond), and it is conceded that the loss suffered by plaintiff by reason of the default of the principal was in the amount of $690.43. It is this amount which plaintiff demands defendant casualty company must pay as surety on the bond.

Uncontradicted testimony establishes the fact that plaintiff by its president, Max S. Goldman, on or about July 10, 1933, communicated to defendant Maryland Casualty Company through Edward J. Coolahan, manager of its New York claim department, intelligence of the default of the Zenith Electric Construction Co., Inc., under its contract. There are differences in the testimony of Mr. Goldman and Mr. Coolahan with respect to the terms of this conversation, but, for the purposes of this opinion, the differences are not material. Mr. Coolahan admits being advised of the default and states that he told Mr. Goldman to " go ahead and get bids and when you have found the lowest of those estimates let me know and I will waive our option to complete." He went on to explain that " under the bond we had an option to complete, if we so desired." He then stated (by his own testimony): " I will pay whatever we owe you when the charges are all determined."

The testimony discloses that pursuant to the above instructions of Mr. Coolahan plaintiff through its president thereupon proceeded to obtain bids; did obtain them; consulted with Mr. Coolahan with respect thereto; awarded the contract, with Maryland Casualty Company's approval, to a new party; and, under the new contract, the electrical work on the post office building was performed. The work was completed late in September or early in October. Final payment was not made by plaintiff, however, until November ninth because of the delay in obtaining the approval of the Federal government with respect to the work done.

On November tenth Mr. Goldman, through his stenographer, made an appointment with Mr. Coolahan to submit his final figures and arrange for payment by the casualty company of its obligation under the bond. The appointment, according to plaintiff's version, was either for the twelfth or thirteenth. Goldman thereupon became ill and did not return to the office until about the seventeenth of November. Thereupon an appointment with Mr. Coolahan was arranged for the twenty-second. On November twenty-second they met and the figures were submitted to Mr. Coolahan and he stated (his own testimony) that he " would have the engineer check them and if found to be in order we would pay." Mr. Coolahan claims that this conversation was on November twenty-seventh rather than on the twenty-second, but this difference is immaterial.

Immediately following the last described conversation Mr. Coolahan " discovered " the limitation in the bond and advised Mr. Goldman of it. When Mr. Goldman took him to task for invoking the limitation in the circumstances and threatened to sue immediately, Mr. Coolahan said (his own testimony): " I will put it up to Baltimore, that nothing could be lost by waiting a few days and the limitation is already expired, and I will see if they are willing to make a concession."

That, in brief, is the record, and, on the record, the court must find for plaintiff. The court finds as a matter of fact that there was an implied waiver of the limitation provision and that defendant casualty company should be and is estopped from invoking its terms to defeat payment of a just claim. A contrary finding would result in a miscarriage of justice. The conduct of an insurance company may be such as to preclude the company from insisting on the time limit for bringing suit provided by the bond. (*McArdle* v. *German Alliance Insurance Co.*, 183 N. Y. 368.) It is well settled that a limitation of time provision, like others intended for the benefit of the insurance company, may be waived. Nor is any positive act of the company intended to induce postponement necessary. (*Berger* v. *Ætna Life Insurance Co.*, 48 Misc. 385.)

The court relies on *Syracuse Lighting Co.* v. *Maryland Casualty Co.* (226 N. Y. 25), and holds that the law of that case is applicable here. There, after reciting facts not materially distinguishable from those in the instant case, the Court of Appeals, through HOGAN, J., speaking for a unanimous court, said: " To determine that defendant had not waived the provision of the policy as to the limitation of time and was not estopped from asserting the same as a defense would impute to it a fraudulent intent to lull the plaintiff into inactivity, induce it to continue negotiations until after the expiration of the thirty days and thereby secure the opportunity to later interpose a defense which it considered impregnable. The conduct of defendant was such as to permit the trial justice to find that defendant with full knowledge of all the facts and of its rights under the policy contract prepared by it, particularly the provision therein limiting the time within which an action against it should be commenced, did not intend to refuse to pay plaintiff the indemnity provided for in the policy or to urge any defense to an action to recover the same, save only the one stated by it, the non-existence of any contractual relation with plaintiff or a right in plaintiff to make a claim against it by reason of such policy, and to abandon its right to urge the particular defense of limitation of time, now sought to be enforced. The finding that such waiver was made estops defendant from now asserting the defense of limitation of time. (*Kiernan* v. *Dutchess Co. Mut. Ins. Co.*, 150 N. Y. 190–195; *Lynchburg C. M. Co.* v. *Travelers Ins. Co.*, 149 Fed. Rep. 954.)" (See, also, *Graham Bros. Aktiebolag* v. *St. Paul Fire & Marine Ins. Co.*, 122 Misc. 581; affd., 220 App. Div. 712; *Colon & Co.* v. *Commercial Casualty Ins. Co.*, 226 id. 525.)

The reasoning of all of the above-cited cases is, in the opinion of this court, entirely applicable to the case before it. It matters little whether the theory of the above line of cases be that of implied waiver or that of estoppel. None of them is materially distinguishable from the instant case. None of them on its facts makes out a stronger case against the insurance company. The important fact is that the higher courts of this State have in effect enjoined upon insurance companies commendable principles of business conduct which, as large corporate bodies possessed of an almost quasi-public interest, such companies should follow. That they do not always do so is cause for regret.

In the case before it the court finds as a matter of fact that the insurance company by its conduct lulled the insured into a sense of security prior to the time when suit was required to be brought under the bond, continued negotiations subsequent to that time, and, as a result thereof, it is estopped from invoking the defense

that the suit was not timely. It would not have been altogether commendable on the part of the plaintiff to hale the defendant insurance company before a court of law on November ninth (as soon as payment was completed), without giving the company a chance to pay without litigation, and yet this is exactly what in effect defendant now claims should have been done. There was something in the nature of a claim before defendant casualty company as early as July, 1933, for at that time defendant acted upon it to the extent of waiving its option to complete. Mr. Coolahan apparently had ample authority to do this. The casualty company knew for approximately four months prior to the limitation date that it would be required under its contractual obligation to pay whatever loss the obligee under the bond sustained. The conduct of the insurance company in seeking to avoid this contractual obligation does not find favor with this court, and the cases above cited indicate that such conduct does not have the approval of the higher courts of the State, including the court of last resort.

Judgment for plaintiff against both defendants in the amount of $690.43. Five days' stay.