THE KELLY-SPRINGFIELD TIRE COMPANY, a Maryland Corporation, Plaintiff, *v.* H. A. STEIN, Doing Business under the Name and Style of H. A. STEIN MOTOR Co., Defendant.

Supreme Court, Trial Term, New York County, May 12, 1937.

*Gleason, McLanahan, Merritt & Ingraham,* for the plaintiff.

*Goodman & Werner,* for the defendant.

SHIENTAG, J.  The action is on a continuing written guaranty with a limited liability of $5,000.  Plaintiff's assignor (hereinafter referred to as tire company) is engaged in the business of selling automobile tires, tubes and accessories.  Defendant is a Ford dealer in Mount Vernon.

Some time prior to the execution of the guaranty which is the subject of this litigation, George Q. Bourne, an automobile tire salesman, was desirous of becoming a " Kelly-Springfield " dealer in Mount Vernon.  (A dealer as here understood was a duly accredited representative of the vendor.)  To that end he required credit but this he could not obtain without assistance.  He, therefore, approached a friend of his of many years standing, the defendant Stein, who had had business dealings with Bourne over a period of time.  Bourne informed the defendant of his plan and the need for credit and asked him if he would guarantee the account of a corporation which Bourne proposed to organize.  The corporation was to have a capitalization of $5,000 to $10,000, and defendant was to receive one-third of the stock in consideration of his guaranty.  The other two-thirds were to be retained by Bourne.  The name of the corporation was decided upon as " Bourne Rubber Company, Inc."

A few days prior to the delivery of the guaranty a conference was held between Bourne, the defendant Stein, and a representative of the tire company, at which time the formation of the corporation was discussed.  Defendant disclosed that he was to have a one-third interest in the corporation.  At the conclusion of the meeting a blank guaranty form and a financial statement in blank were given to the defendant so that he might execute the same and return them to the tire company.

Thereafter and on October 6, 1933, the defendant delivered to plaintiff the guaranty, together with his financial statement.  The guaranty in part read: " In order to induce the Kelly-Springfield Tire Company to extend credit to Bourne Rubber Company, Inc., the undersigned does hereby guarantee to the company the full and prompt payment at maturity of all bills and invoices that the company has now rendered or may hereafter render against the customer."

The financial statement read in part: " To Kelly-Springfield Tire Co., New York, for the purpose of inducing you to extend and/or to continue to extend credit for goods to be sold by you

to Bourne Rubber Co., Inc., and to induce you to accept my or our guaranty covering said account, the following is given you as a true statement of my or our assets and liabilities and general financial condition."

The defendant himself wrote in the words " Bourne Rubber Company, Inc.," in both of these documents and acknowledged them before a notary public. At that time defendant knew that no such corporation had been organized.

On October sixth, also, a warehouse consignment agreement was entered into between Bourne and the tire company. This agreement and the rider attached thereto were executed in the name of Bourne Rubber Company, Inc., George Q. Bourne, president, and a corporate acknowledgment attached to both instruments which recited that George Q. Bourne was the president of Bourne Rubber Company, Inc., " the corporation described in and which executed the foregoing instrument," and that Bourne knew the seal of the corporation and that it was affixed by order of the board of directors and his name signed by like order.

The tire company shortly thereafter commenced selling merchandise to Bourne Rubber Company, Inc. This merchandise was billed to that company and sent to the place where George Q. Bourne was doing business as a Kelly-Springfield dealer in White Plains, N. Y. Sales were made between October 27, 1933, and May 20, 1935, and the general ledger sheet was entitled " Bourne Rubber Co., Inc., 1923 Martine Avenue, White Plains, New York."

Defendant had inquired of Bourne the latter part of October or early part of November, 1933, if the corporation had been organized, and he was informed that Bourne had not gotten around to it but would take care of it a little later. In fact defendant knew right along from October, 1933, that there was no such corporation, but at no time did he advise the tire company of that fact. He also knew in October, November and December, 1933, that the tire company was selling goods to Bourne and he saw their merchandise in Bourne's store in White Plains.

The defendant during this time had bought tires from Bourne for two of defendant's companies — H. A. Stein Motor Company and Brewster Motor Sales and Service. The bills and invoices were made out in the name of " Bourne Rubber Company, Inc."

Plaintiff at no time had any knowledge that the incorporation of Bourne Rubber Company, Inc., had not been effected. In October, 1933, the tire company had printed for Bourne bills and letterheads with the inscription " Bourne Rubber Company, Inc."

Bourne failed to pay for much of the merchandise, as a result of which plaintiff instituted this action against the defendant on his written guaranty. This factual structure presents a rather novel problem. Keeping in mind the principle of *strictissimi juris*, is the defendant liable on a guaranty of a corporate account when in legal contemplation there was no such corporation? On first blush the answer would appear to be in the negative; but other factors are present here which take the case out of the usual rule. The facts inescapably lead us into the field of estoppel.

The plaintiff here is not seeking to recover on the theory that the parties intended the guaranty to cover the individual account of George Q. Bourne. On the contrary, the plaintiff predicates its claim on the theory, *first*, that the parties constantly spoke of and referred to the business organized by Bourne as Bourne Rubber Company, Inc.; *second*, that defendant in writing in effect represented affirmatively that such corporation had been formed, and *third*, that the tire company acted in reliance on such representation.

The evidence shows that prior to the delivery of the guaranty and the financial statement all parties understood that Bourne's business was to be incorporated under the name of Bourne Rubber Company, Inc., that defendant Stein was to be a minority stockholder of that corporation by virtue of his guaranty of the account; that Stein disclosed this fact to the tire company and explained " exactly what was going to be done " in the organization of the corporation.

Plaintiff was ignorant of the actual situation and its attention was never called to the fact that Bourne had not incorporated his business, nor was there anything in the course of conduct between the parties that was calculated to arouse inquiry on the part of the tire company.

The plaintiff had a right to rely on the representations of the incorporation of Bourne's business; the guaranty recited the existence of such a corporation; the financial statement disclosed the same; the consignment agreement entered into between tire company and Bourne revealed the actual incorporation of Bourne's business. With these documents before it the tire company had a right to rely on the fact that there was in existence such an entity as Bourne Rubber Company, Inc. It had no contrary knowledge.

Yet during the period covering sales of approximately $19,000 the defendant knew all along from the early part of October, 1933, that no corporation had been organized; he learned this from Bourne but at no time disclosed this fact to the tire company. This despite his knowledge that merchandise was being sold by the tire

company to Bourne and he had seen such merchandise in Bourne's place of business.

I hold that it was the duty of Stein to disclose the true situation to the tire company. By his guaranty and financial statement with the representations which they both carried and also by his silence plaintiff was induced to and did extend large credit to Bourne. All the elements of a classic equitable estoppel are present — representation by the defendant of the incorporation, reliance by the company on such representation, ignorance on the part of the tire company of the real situation, and consequent damage. Nothing more is required. (*Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285; *Parsons* v. *Lipe*, 158 Misc. 32; affd., 243 App. Div. 681; affd., 269 N. Y. 630.) But it is argued that the defendant was not guilty of actual fraud or bad faith. Estoppel does not rest upon such a narrow basis. " Actual or intended fraud is not an element essential to it. Neither affirmative acts or words nor silence maintained with the fraudulent intention of deceiving are indispensable elements of it. But it arises only when, relatively to the party invoking it or his privies, the omission to speak is an actual or constructive fraud." (*Rothschild* v. *Title Guarantee & Trust Co.*, 204 N. Y. 458, 462. See, also, *Continental Nat. Bank* v. *National Bank*, 50 id. 575, 583.) Defendant allowed plaintiff to deal on the basis of an existing corporation, well knowing that no such corporation had been formed. He should, therefore, be estopped from now saying that the corporation had no existence. (See *New York American, Inc.*, v. *Hub Advertising Agency*, 136 Misc. 596; *Mason* v. *Nichols*, 22 Wis. 376, and *Walter & Co.* v. *Zuckerman*, 214 Cal. 418; 6 P. [2d] 251.)

Without attempting to soften the rigor of the ancient rule, that the liability of a guarantor is to be strictly limited and construed, that rule should not be applied to bring about an unjust result where the guarantor himself was in effect responsible for the variance from his obligation of which he now complains. Upon principles of justice and fair dealing and under the law, the defendant should not be permitted, in the circumstances of this case, to escape liability.

Accordingly, judgment is directed in favor of the plaintiff in the sum of $5,000, with interest from June 6, 1935. Exception to defendant, twenty days' stay of execution; thirty days to make a case.