Burke, J.
(dissenting). On this appeal we are called upon to determine whether there is evidence from which a jury might reasonably conclude that plaintiff rightfully relied upon the words and acts of defendant surety company or its agent, to its detriment. We believe that there was no evidence to support a finding of estoppel.
The majority opinion concedes that Maryland was under no obligation to inform plaintiff or its attorneys of the correct legal procedures to be followed by it to preserve its rights under the surety bond, but asserts that Maryland deliberately diverted *451 attention from such remedies by negotiating for a settlement in bad faith.
The negotiations referred to consisted of one conference and two brief telephone conversations.
We do not think that the testimony of the attorneys in regard to the conference and the telephone conversations carries with it the fair implication that Mr. Pasqna was acting in a representative capacity for Maryland. At the conference Mr. Pasqna stated that the only difference of opinion involved the amount of excavation yardage to be credited to Dan-Bar. Thus, the liability of Dan-Bar was perhaps conceded. But this remark was in no way a concession of-the liability of Maryland. Maryland’s attitude was not mentioned at the conference. This significant fact cannot be summarily dismissed by the majority’s assertion that Maryland’s liability was absolute, and that implicit in the negotiation was the necessary assumption that whatever the figure arrived at, it would be paid by Dan-Bar, or if Dan-Bar failed to pay it, by Maryland. Since Maryland’s liability was not absolute, but was conditioned upon the foreclosure of the lien (State Finance Law, § 137) — we cannot assume, in the absence of a clear concession by Maryland — that it would pay if Dan-Bar did not. It is the acts of Maryland viewed objectively which would give rise to an estoppel, not our subjective nonfactual impressions, nor the erroneous assumptions of plaintiff.
At the conclusion of the conference, an offer was made to pay only a small part of the sums allegedly owing from Dan-Bar to the plaintiff, with arrangements to be made for the deferral of the balance of the total due. Again the nature of this offer rebuts any inference that the attorney was acting for Maryland. If the liability of Maryland was conceded, there would be no need to discuss the amount of money that could be raised promptly. Similarly, if attorneys for the plaintiff regarded the attorney for Dan-Bar as also representing Maryland, they would have insisted, at this conference, that full payment be made immediately.
After the conference, there were two brief telephone conversations between the attorneys, with reference to one of the officers of Dan-Bar. The last conversation between the attorneys took place well in advance of the expiration date of the lien. *452 By that time, it was apparent to plaintiff’s attorneys that the negotiations were not proceeding favorably.
Syracuse Light. Co. v. Maryland Cas. Co. (226 N. Y. 25) and Rego Bldg. Corp. v. Maryland Cas. Co. (151 Misc. 801) are clearly distinguishable. Unlike the present case, no third party was primarily liable. The negotiations were had directly with officials of Maryland, looking to Maryland alone for payment. Furthermore, in both these cases, Maryland continued the negotiations after the short contractual period of limitations within which the actions were to be commenced had expired.
The question here is not whether Mr. Pasqua had apparent authority to bind Maryland by virtue of the filing of an answer in its behalf, but whether at the conference or during the telephone conversations he, by word or action, purported to speak for Maryland to a degree sufficient to cause the plaintiff to abandon means known to it for the enforcement of its claim.
In this case the proper remedy had been overlooked by the plaintiff. It was simply sleeping on its rights. Consequently the behavior of Maryland or that ascribed to Maryland via Mr. Pasqua did not cause plaintiff to change its position or mislead it.
The evidence shows that plaintiff’s inaction in failing to renew the lien was due to its misunderstanding of the law, and not through reliance upon any representation made by Maryland, if in truth the acts of Mr. Pasqua are attributable to Maryland. Even after the lien had expired and plaintiff’s attorneys were informed that funds were not available (this too is indicative that plaintiff was looking to Dan-Bar for payment), plaintiff insisted it had a right to maintain the action.
From the record then it is clear that plaintiff’s neglect with regard to the lien was not actuated by the representations made by Maryland, but because it was unaware of the necessity of foreclosing the lien before it could proceed against Maryland. Thus we do not have an inducement to disregard the lien. The plaintiff’s decision not to enforce or to renew the lien was premeditated and wholly voluntary.
Plaintiff is not assisted by the argument that the lien was worthless and, hence, Maryland has lost nothing by plaintiff’s failure to foreclose. Such a proposition ignores the objects which the legislation was meant to accomplish.
*453 Since the evidence indicates that Maryland did not lead plaintiff into failing to renew the lien or foreclosing it, but rather that plaintiff’s inaction was dictated solely by its own misconception of the applicable law, there is no basis upon which an estoppel may be grounded. Therefore, the Appellate Division’s dismissal of the complaint should be affirmed.
Chief Judge Conway and Judges Froessel and Van Voorhis concur with Judge Fuld; Judge Burke dissents in an opinion in which Judges Desmond and Dye concur.
Judgment reversed, etc.