Fuld, J.
The plaintiff, maintaining that defendant Maryland Casualty Company had lulled it into inactivity to induce it to continue settlement negotiations until its lien had expired, *446 asserted an estoppel against the defendant. The jury returned a verdict for the plaintiff, but the Appellate Division reversed the judgment and dismissed the complaint. We are called upon simply to determine whether sufficient evidence was presented to justify a finding of estoppel.
Dan-Bar Contracting Co., Inc., had an agreement, as general contractor, with the State of New York for the construction of certain public highways. The defendant had executed and delivered to the State of New York a bond guaranteeing Dan-Bar’s prompt payment of moneys due to persons supplying labor and materials in carrying out the contract. The plaintiff was such a subcontractor. In September of 1953, it filed a lien with the State Comptroller and the Department of Public Works for more than $60,000, the balance allegedly due from Dan-Bar. Such a lien, the Lien Law (§18) provides, remains valid and effective for six months unless an action is commenced to foreclose the lien within that time or an order is made by the court continuing and extending it.
Two weeks after filing the lien, actually worthless because of other liens and a prior assignment by Dan-Bar, far in excess of the amount due Dan-Bar from the State, plaintiff’s attorneys wrote to Maryland referring to its bond and informing it of Dan-Bar’s indebtedness. Some time later, the attorneys sent a letter to Dan-Bar, despatching a, copy to Maryland, advising of the sum due their client and <r0itheir intention, if payment was not made, to bring suit a,-^nst both Dan-Bar and Maryland. A reply, received on b^fAlf of Dan-Bar from its attorneys, suggested that there was a yhgjscrepancy ’ ’ in the amount said to be due, requested an itemi*Fstatement and expressed a willingness to “ discuss ” the mat'Hand make payment when final payment was received from themsate. Plaintiff’s counsel thereupon furnished Dan-Bar’s attonews with a copy of the lien showing computation of the amoiKt due. When, however, more than a month went by without aWord, the plaintiff brought this action against Dan-Bar on its contract and against Maryland on its undertaking.
The same attorneys who had written on behalf of Dan-Bar appeared for both defendants and, in a letter accompanying the answer filed on behalf of both, suggested a conference looking toward an “ amicable settlement”. A meeting, scheduled for *447 the following week, was put off at the request of defendants’ lawyers. When the conference was finally held, the attorney who appeared for the defendants, expressing a desire to settle the matter as promptly as possible, declared that the only problem, ‘ ‘ the only real controversy ’ ’, was over a relatively small item of excavation yardage and that, except for this, payment would be made “promptly.” Determination of the matter, this lawyer stated, depended upon consultation with an officer of Dan-Bar. Thereafter, when plaintiff’s attorney inquired concerning the delay, he was told either that the officer ‘1 had been away ’ ’ or that ‘ ‘ they had not as yet had an opportunity to examine the records at the state engineer’s office, but that they were going to do it shortly ’ ’.
However, nothing happened. Or, more precisely, nothing happened until plaintiff’s lien expired. Nine days after that occurred, defendants’ attorneys wrote, “with deep regret,” that they ‘ ‘ were unable to raise any funds ’ ’ and that, as Maryland had previously suggested, they would now make a motion to dismiss the complaint on the ground that, “ Once a lien was filed, a direct contract action was precluded ”, the only action maintainable being ‘1 a lien foreclosure ’ ’ suit. Their not making the motion to dismiss earlier, the attorneys expressly acknowledged, ‘ ‘ was not an oversight ’ [1]
Thereupon, following its expressed plan, Maryland moved for judgment on the pleadings because of plaintiff’s failure to allege that it had perfected and foreclosed its lien, a condition precedent to suit on the bond (State Finance Law, § 137). The Appellate Division, granting the motion, dismissed the complaint with leave to the plaintiff to serve an amended complaint (285 App. Div. 299) and this court affirmed (309 N. Y. 665).
After obtaining a judgment against Dan-Bar for $52,920.33, plus interest and costs, which proved uncollectible, the plaintiff amended its complaint by alleging that Maryland had waived enforcement of the lien as a condition precedent to liability on its bond and that it was estopped from asserting such nonenforcement as a defense. Upon the trial, the court submitted the issues of waiver and of estoppel to the jury which returned a *448 verdict in favor of the plaintiff. The Appellate Division, however, reversed the judgment and dismissed the complaint, stating that there was 11 no basis in the record ’ ’ for a finding of either estoppel or waiver.
We do not agree. Although there may be some question as to whether there was adequate proof of waiver, there can be no doubt that the evidence adduced amply supported a finding that the defendant was estopped from asserting as a defense the plaintiff’s failure to foreclose its lien.
An estoppel, this court has said, “ rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury. ’ ’ (Metropolitan Life Ins. Co. v. Childs Co., 230 N. Y. 285, 292; Lynn v. Lynn, 302 N. Y. 193, 205.) Indeed, “ A party may not, even innocently, mislead an opponent and then claim the benefit of his deception. ’ ’ (Romano v. Metropolitan Life Ins. Co., 271 N. Y. 288, 293; see, also, Syracuse Light. Co. v. Maryland Cas. Co., 226 N. Y. 25, 36.) And, more to the point, it has been at least twice held, in actions against this very same defendant, that an estoppel may be predicated upon evidence that the defendant, by resort to settlement negotiations, intended “ to lull the plaintiff into inactivity,” to “induce it to continue negotiations until after the expiration of the * * * time within which an action” could be maintained. (See Syracuse Light. Co. v. Maryland Cas. Co., 226 N. Y. 25, 36, supra; Rego Bldg. Corp. v. Maryland Cas. Co., 151 Misc. 801, 803-805.)
The proof in the case before us unquestionably permitted the jury to find that the defendant had misled the plaintiff, that it had lulled it into inactivity and that it was thereby estopped from urging that the plaintiff had not perfected its lien. Concededly, Maryland knew that the plaintiff could not prevail if it failed to procure an order continuing its lien. Saying nothing of this, admittedly not through oversight, but deliberately, the defendant, through its attorneys, engaged in protracted settlement negotiations, in the course of which it informed the plaintiff and its lawyers that the only “ real controversy ”, the only “ real question ”, was “ over some excavation yardage ” and that, if “ the amount to be paid ” could be agreed upon, payment would be “promptly” made. And, following these assertions, one of defendant’s attorneys called plaintiff’s *449 counsel to say that he 1 ‘ had not as yet had an opportunity ’ ’ to check the figures, promising that he would do so and ‘‘ let [him] know further ”.
When advised by opposing counsel that the settlement awaited only the determination of amount and that prompt payment would be made, the plaintiff and its attorneys were, the jury was entitled to infer, reasonably led to believe that for all practical purposes the matter was settled. Accordingly, they did — again reasonably, the jury was privileged to conclude — nothing. As one of plaintiff’s lawyers testified, “ I knew it [the lien] would expire in due course but it was just a question of getting a computation on the final estimate. I thought we were finally settled; * * * we didn’t pay any further attention to the lien. We thought the case was being settled and we were dealing with people [whose word] we could take ”.
From facts such as these, the jury was certainly warranted in finding that Maryland had from the start determined upon a course of conduct designed to lead the plaintiff to believe that it was not necessary for it to do anything with respect to its lien. Maryland was, of course, under no duty to instruct the plaintiff or its counsel as to the correct procedure to be followed. But, on the other hand, it was not privileged deliberately to divert attention from the lien, and the necessity to renew it, by negotiating for a settlement not to be consummated, by giving assurances that the only open question concerned a relatively insignificant item and by willfully prolonging negotiations until after expiration of the lien.
Maryland may not escape the consequences of such estoppelWmduct by any claim that it was not represented at the settlement conferences or that plaintiff’s inaction was not attributable to anything which it did. Such an argument overlooks the fact that the lawyer who was present at the meetings appeared in the action then pending not only for Dan-Bar but also for Maryland, that he had filed an answer on Maryland’s behalf and that it was he who had requested the conferences. Apparent authority to negotiate a settlement with the plaintiff he undoubtedly possessed, and no one came forward at the trial, on his behalf or Maryland’s, to deny the existence of actual authority. The circumstance that Maryland may not have been mentioned *450 during the conferences is of no consequence. As is perfectly evident, there was no reason to discuss the bonding company, for the amount of its liability unquestionably depended solely on what Dan-Bar owed the plaintiff. Actually, the defendant lost nothing by plaintiff’s failure to foreclose since the lien was worthless and the indebtedness could not have been reduced even if the lien had been perfected.
The attorneys for the plaintiff could undoubtedly have avoided what occurred by the simple expedient of continuing the lien or by commencing suit to foreclose the lien before it expired. Perhaps, they were too trusting, perhaps, they placed an undue confidence in the lawyer who represented Maryland or, perhaps, they were even careless. Whatever the reason for the way they acted, the record demonstrates that they were misled into inactivity by what transpired. In other words, they were reasonably justified in relying on the representations made by the defendants’ attorney that only one minor question, of computation, remained for resolution and in concluding that nothing had to be done vis-a-vis the lien. There was ample basis, therefore, for a finding by the jury that the defendant was estopped from asserting plaintiff’s nonenforcement of its lien as a defense.
Since, then, the plaintiff made out a prima facie case, the Appellate Division should not have dismissed the complaint. However, we may not, as urged upon us, reinstate the verdict; the reversal having been on the facts, as well as on the law, the case must be retried. (See, e. g., Kline v. Pane, 1 N Y 2d 15; Stein v. Palisi, 308 N. Y. 293.)
The judgment should be reversed and a new trial granted, with costs to abide the event.

. The lawyers who carried on the negotiations on behalf of the defendants were not, we digress to observe, the attorneys who represent the defendant on this appeal.