■ COMMUNICATIONS FUND, INC., Respondent, v. WIRY, INC., Appellant.— Order, Supreme Court, New York County, affirmed. Respondent shall recover of appellant $50 costs and disbursements of this appeal. In this action for specific performance of the warrants to purchase 17½ shares of defendant's stock or, alternatively, damages, defendant moved to dismiss on the ground of a defense founded on documentary evidence (CPLR 3211, subd. [a], par. 1). Essentially, defendant claims plaintiff was late by three days in its attempt to exercise the option September 14, 1971. The warrants were issued as part of an underlying $60,000 loan from plaintiff to defendant. The warrants were exercisable within seven years from February 25, 1965, or three years after date of payment in full of the debt, whichever should first occur. By check dated September 9, 1968 drawn on National Commercial Bank and Trust Company of Plattsburgh, N. Y., defendant assumed to pay the full balance due. In a letter of September 9, 1968 from plaintiff to defendant, and accepted in writing by defendant, receipt of the check was acknowledged subject to any necessary adjustment resulting from plaintiff's accountants' computations. Defendant was informed in the letter " upon clearance of the check" the stock and remaining collateral security would be transmitted to it. The back of the check shows it cleared an Albany, N. Y. branch of the bank on September 12, 1968, but no decipherable date appears for the clearance at the Plattsburgh branch, the drawee bank, which might be considered as a separate bank for this purpose (Uniform Commercial Code, § 4–106). Under date of September 17, 1968, defendant wrote to plaintiff enclosing a financial statement of defendant for plaintiff's " use in determining a price for the stock options " held by plaintiff on defendant. The letter contained a request that plaintiff forward the stock-canceled note " as soon as our check is cleared." On October 30, 1968 the promissory note and stock certificates were returned. By letter dated

July 29, 1970, defendant was informed that at a recent directors' meeting plaintiff decided "it would be desirable to exercise all or part of" the warrants. Accordingly, certain information was sought from defendant. Defendant suggested a sale and leaseback of certain realty owned by defendant as a more desirable alternative than an exercise by plaintiff of the warrants. Extensive negotiations, including an appraisal of the property ordered by plaintiff, came to naught. By letter dated April 28, 1971 plaintiff referred to earlier discussions concerning conversion of the warrants, and requested that the parties confer on defendant's next visit to New York "since the warrants will either want to be exercised or exchanged within the next few months." The various negotiations and written communications between the parties, including more particularly that of September 9, 1968, raise a question as to the intent and agreement of the parties. There is also a question as to the actual date of clearance at defendant's bank, and the significance thereof in terms of the understanding between the parties. As Special Term stated, there is also a possible estoppel by reason of defendant's conduct. We make no such determination but advert to the possibility as an additional reason why disposition of this matter should await trial. Concur — Stevens, P. J., Murphy, Eager and Capozzoli, JJ.; Steuer, J., dissents in the following memorandum: The decision of Special Term denying defendant's motion to dismiss the complaint is sought to be supported on two grounds. The first is that the purported exercise of the option was timely or at least there is an issue as to its timeliness; and, second, that defendant is estopped by its conduct from asserting such a defense. I believe neither ground to be valid. The facts are not in dispute. In 1965 plaintiff made a loan to defendant of $60,000. As a part of the consideration for the loan plaintiff received a so-called warrant, really an option to purchase 17½ shares of defendant's stock at a price of $510 per share. The option was exercisable at the earlier of two dates, depending on subsequent events. If the note was not paid until maturity the option date was February 25, 1972; if it was paid before maturity the date was three years after payment in full. On September 9, 1968, defendant delivered to plaintiff its check in the sum of $32,000, which represented the unpaid balance and interest, plus a sum provided in the note as a penalty for prepayment. By agreement the check was accepted subject to clearance and plaintiff's accountant's verification that the interest and penalty amounts were correct. The check was deposited and cleared defendant's bank on September 12. Several days later, the calculations were found to be accurate and plaintiff's bank had credited the amount of the check. The note and a portion of the security withheld by consent were returned. The option was purportedly exercised on September 14, 1971. It is clear that the date of payment of the note was September 9, the date the check was accepted. Where one instrument is given in payment of another, there may well be a question whether the first instrument is discharged, depending on the intent of the parties. But where the second instrument is paid, the date of payment of the first instrument is the date on which the second is received (cf. *Hunter* v. *Wetsell*, 84 N. Y. 549, 554; *Kelley* v. *Lawrence Bros.*, 78 App. Div. 484, 486). Consequently the attempt to exercise the option was made more than three years after payment of the note in full. It appears that beginning in June, 1970 plaintiff desired to do something in regard to the options. Plaintiff was not anxious to become a minority stockholder of defendant and the parties met in August, 1970 to discuss whether an arrangement in regard to substituting certain real estate in place of the stock could not be arrived at. Plaintiff had the property appraised, but the appraisal was a long time in coming, and it was not until May, 1971 that a second discussion on the

subject took place. At that meeting it appeared that the parties were far apart on their valuations of the property and nothing further along that line was feasible. On July 24, 1971, plaintiff's president wrote defendant's president, asking if he had any new thoughts on the subject. The letter was not answered and there was no further communication between the parties until the purported exercise of the option. Nothing in the above shows any act or conduct on which the plaintiff could rely as indicating that defendant intended to extend the option time or was not going to enforce its rights. Such a representation by word or act is essential (*Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285). Here plaintiff knew the expiration date, and knew that an alternate agreement was not acceptable and for almost three months the defendant had declined to consider any other arrangement. To hold that under such circumstances an estoppel can be invoked runs contrary to the unquestioned authorities in this jurisdiction (*World of Food* v. *New York World's Fair*, 22 A D 2d 278; *Skyway Container Corp.* v. *Castagna*, 27 A D 2d 542).