Jesse M. Eisen, J.
The plaintiff instituted suit against the defendant insurance company and two of its employees and sought reimbursement under "no-fault” (Comprehensive Automobile Insurance Reparations Act) for medical and hospital expenses. In addition, pursuant to the provisions of section 675 of the Insurance Law she also requested interest at the rate of 2% per month on the claimed reimbursement, as an over-due payment, plus a recovery of her reasonable attorney’s fee. The defendant’s answer contained a general denial and affirmative defense to the effect that the settlement by the plaintiff of her claim with the defendant company under the uninsured motorists endorsement, in the amount of $10,000, should be set off and credited against the plaintiff’s demand for the reimbursement for the medical and hospital expenses.
*1092 A trial of the issues was held before the court without a jury. The plaintiff stipulated at the trial, through her attorney, that the Utica Mutual Insurance Company was the only necessary defendant and thereupon relinquished her suit against any other defendants, and she likewise further stipulated that the sole claims to be adjudicated by the court herein were the unpaid surgeon’s fee of $1,700 to Doctor Rudolph Pelzer and the hospital obligation to Saint Joseph’s Hospital in the sum of $649.51.
The facts elicited at the trial generally were not in dispute. The testimony on behalf of the plaintiff was presented primarily by her attorney based upon his records and office file and various documents and exhibits placed into evidence. It appeared that on February 9, 1974, the plaintiff was injured in an accident involving an uninsured motor vehicle and suffered serious injuries. She was covered by insurance as a member of the household of one Peter Fiala, a policy holder of the defendant Utica Mutual Insurance Company. Said policy carried endorsements providing for protection against uninsured motorists and for "no-fault” coverage benefits. Thereafter, claims were presented to the defendant company under the uninsured motorists provisions of the policy and necessary medical bills and reports were also furnished. A demand for arbitration in connection with the uninsured motorists provision was duly filed.
The evidence submitted on behalf of the plaintiff indicated that she and her attorney were advised by official representatives of the defendant company that she would be reimbursed for her medical and hospital expenses under "no-fault”, in addition to the sums paid under the uninsured motorists provision of the policy, which reimbursement would include future plastic surgery by Doctor Pelzer and the necessary hospital expenses in connection therewith. She settled the uninsured motorists matter for $10,000 and two drafts totaling that amount were issued by the defendant Utica Mutual Insurance Company. Two other drafts were delivered at the same time by said company, one for payment to Doctor Pelzer in the sum of $75 for consultation, and the other for the Department of Social Services in the sum of $789.04 for hospital and medical bills with the legend thereon that they covered "partial no-fault payments benefits”.
The testimony disclosed that a physician examined the plaintiff on behalf of the defendant company and confirmed *1093 her "scarring” arising from the accident, and the possibility of her undergoing future plastic surgery. That thereafter on March 19, 1975, in reliance upon the representations by the defendant company regarding "no-fault” reimbursement for her contemplated expenses, the plaintiff was admitted to Saint Joseph’s Hospital and while there underwent plastic surgery performed by Doctor Pelzer. She was discharged from the hospital on March 21, 1975 with a hospital charge in the amount of $649.51. Doctor Pelzer testified as to the professional services rendered by him for the plaintiff in connection with the surgery and the reasonable value thereof and also as to the Saint Joseph’s Hospital bill. He stated that forms were prepared for the defendant insurance company as required with reference to "no-fault” coverage and the remittance to him of his $1,700 fee, and that these were submitted. On cross-examination, Doctor Pelzer, said that plastic surgery was elective when the purpose was to eliminate the scarring.
The defendant’s testimony was limited to one witness an employee described as its "authorized representative” on the drafts which were transmitted by it to the plaintiff and the other payees. The witness stated that the evidence submitted by the plaintiff through her attorney was substantially correct. He admitted that he had dealt with the plaintiff’s lawyer in connection with this matter and that he had said that there would be the "no-fault” payments to the plaintiff in the future, and that he had been so advised by his supervisor in the defendant company. It appeared that at some time thereafter — following the surgery — the defendant’s claims manager had decided that the fees or bill for the plastic surgery and hospital would not be paid under "no-fault” and asserted as the reason for this refusal the State Insurance Department regulation, 11 NYCRR 65.6 (q). Further, that payments heretofore made by the company under "no-fault” were remitted by mistake and in ignornace of the insurance regulation. The refusal by the defendant to pay these sums occurred on or about April 17, 1975.
Section 65.6 (q) of the regulations provides as follows:
"(q) MVAIC and uninsured motorist protection.
"To the extent that the insurer pays first party benefits to an applicant, the insurer is entitled to recover such first party benefits from the proceeds of any settlement or judgment such applicant may receive for the same injury under the New *1094 York motor vehicle accident indemnification endorsement or the protection against uninsured motorist coverage.”
It is the position of the defendant that under this provision it would be entitled to a credit or "recovery” against the plaintiff’s uninsured motorists payment for any first-party benefits possibly due under "no-fault” coverage. This, even though the procedure indicated in the above regulation was reversed since the plaintiff’s uninsured motorists claim was paid without initially disposing of the first-party benefits claims.
There have been various decisions dealing with the interrelationship between "no-fault” and the uninsured motorists coverage. These have treated primarily with the question of whether a claimant may after recovering "no-fault” payments pursue a claim under the uninsured motorists provisions of the policy. It appears that the prevailing opinion is that the claimant may recover both, as different types of damage, and without setoff despite 11 NYCRR 65.6 (q). The courts and Law Journal comments infer that to find otherwise, under most circumstances, would be anomalous and inconsistent with the purpose of the statute. (See, i.e., Matter of Spitaleri [Hartford Acc. & Ind. Co.] NYLJ, Dec. 16, 1975, p 5, col 4; Aetna Cas. & Sur. Co. v Napoli, NYLJ, Feb. 5, 1976, p 6, col 3; Matter of Vidalina Moreno Rosado [Allstate Ins. Co.] NYLJ, March 15, 1976, p 11, col 6; Matter of Matos [Government Employees Ins. Co.] NYLJ, April 2, 1976, p 11, col 6; Economics & No-Fault, NYLJ, Jan. 27, 1976, p 2, col 3; Economics & No-Fault, NYLJ, April 27, 1976, p 2, col 4; cf., also, Matter of Adams [Government Employees Ins. Co.] 52 AD2d 118.)
It is the decision of this court that based upon all of the evidence herein the defendant insurance company cannot set off as a credit the promised "no-fault” benefits covering the $1,700 fee due to Doctor Pelzer and the $649.51 hospital bill owed to Saint Joseph’s Hospital as against the uninsured motorists payment. The latter $10,000 remittance was made by the defendant company with the knowledge and expectation that it would also pay the cost of the future plastic surg;ery and the hospital expenses. The "Receipt Release & Trust Agreement” executed by the plaintiff in favor of the defendant in connection with the $10,000 was limited by its terms to the discharge of all claims under the "Benefits for Injury by Uninsured Automobiles”. Considering the totality of the circumstances testified to herein it would appear that when the defendant company paid the uninsured motorists *1095 claim it was settling all demands except those which might be described and covered as "no-fault” benefits. This is confirmed by the trial exhibits which clearly pointed out that simultaneously with the uninsured motorists payment the defendant issued two additional drafts labeled as "Partial No-Fault Benefits Payments”, thus recognizing and admitting its "no-fault” obligation. 11 NYCRR 65.6 (q) — or a similar provision— had been in effect for more than one year prior to the defendant’s disclaimer and for nearly as much time prior to its acceptance of the release and its delivery of all of the drafts. It would be unrealistic to give credence to the defendant’s contention that it was then unaware of this regulation and that it was therefore mistaken in making "no-fault” payments and in promising to forward to the plaintiff subsequent first-party remittances for the doctor and the hospital bills. This can hardly be the action of a skilled and trained insurance company abundantly supplied with experience and expertise.
In addition, there are unusual undisputed facts in this matter which also must be considered. It was testified that the plaintiff submitted herself to the plastic surgery after she had received assurance from the defendant company that her doctor’s fee and hospital bill would be paid as first-party obligations under the policy. The plastic surgery was described as elective and was undergone in reliance upon and as the result of the defendant’s promise. The plaintiff had changed her position based upon this representation. It may be stated generally that the declaration by the defendant insurance company to the plaintiff and her agent was intended and calculated — or might reasonably be expected — to influence the conduct of the plaintiff and did in fact lead to her actions herein ultimately resulting in the plastic surgery and hospitalization. It would certainly appear that under these circumstances it would be inequitable for the defendant company thereafter to attempt to defeat the plaintiff’s claim for reimbursement and it is estopped from so doing. The Court of Appeals in Metropolitan Life Ins. Co. v Childs Co. (230 NY 285, 292-293) stated that "An estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury. When this occurs it would be inequitable to permit the first to enforce what would have been his rights under other circumstances.” The defendant must not be permitted to deny the effect of its promises to *1096 the plaintiff which caused her to act as she did and incur the obligations sued for herein, and then attempt to escape its commitments by stating that these obligations were merely an agreement to do something in the future. (Cf., also, 28 Am Jur 2d, Estoppel & Waiver, § 48 et seq.; Williston, Contracts, [3d ed], § 139 et seq.)
The plaintiff is awarded judgment in the sum of $1,700 due to the plastic surgeon, Doctor Pelzer, and $649.51 owed to the Saint Joseph’s Hospital. She is also entitled to interest thereon at the rate of 2% per month commencing 30 days after the receipt of the denial of her "no-fault” claims. In addition, based upon the trial testimony and the affidavit of service filed by the plaintiff’s attorney and all of the issues and the facts herein, the plaintiff is allowed reasonable attorney’s fees in the sum of $850 (see Arbitration, NYLJ, April 30, 1976, p 2, col 1).